H. D. HITT *v.* CANEY FORK GULF COAL COMPANY

AND

H. D. HITT *v.* ROSE GIBBONS *et al.*

(*Nashville.* December Term, 1910.)

1. **RES ADJUDICATA. Defense must be specially pleaded.**
The defense of *res adjudicata* cannot be considered, unless specially pleaded. (*Post, p.* 339.)

2. **REDEMPTION. Money may be paid to clerk of court making sale, and in other cases to clerk of circuit court; and in all cases to purchaser or rightful claimant under him.**
The true construction of our statutes (Shannon's Code, sections 3813 and 3823, and Acts 1897, ch. 132), preserving the beneficient right of redemption and prescribing the method of exercising and making effective that right is that the debtor whose land has been sold may always make certain his redemption by paying the redemption money to the clerk of the court under whose judgment or decree the land was sold; and in other cases, to the clerk of the circuit court in which the land lies; and in this way, the peril of deciding an actual or possible controversy between the purchaser and a claimant under him by transfer or otherwise as to which is entitled to the redemption money may be avoided, although the redemption money may in all cases be paid to the purchaser or to the rightful claimant under him. (*Post, pp.* 340, 341.)

Code cited and construed: Secs. 3813, 3823 (S.); secs. 2949, 2959 (M. & V.); secs. 2126, 2136 (T. & S. and 1858).

Acts cited and construed: Acts 1897, ch. 132.

Hitt v. Coal Co.

3. REGISTRATION.    Upon defective probate is inoperative as notice.

The registration of a deed of conveyance of land, upon a defective certificate of acknowledgment or probate, does not operate as notice under our registration laws. (*Post, pp.* 342, 344.)

4. SAME.    Same.    Deed registered upon defective probate is good between the parties.

A deed of conveyance of land is good between the parties, and is binding on the grantor and his heirs and representatives, notwithstanding its registration on a defective certificate of acknowledgment or probate. (*Post, pp.* 344, 345.)

5. SAME.    For twenty years on a defective probate becomes a good registration.

Where a deed of conveyance of land has been registered for twenty years, upon a defective certificate of acknowledgment or probate, it becomes good, that is, a good registration. (*Post, p.* 345.)

Code cited and construed:    Sec. 3761 (S.); sec. 2898 (M. & V.); sec. 2084 (T. & S. and 1858).

Cases cited and approved:    Matthewson v. Spencer, 3 Sneed, 513; Mathewson v. Spencer, 4 Sneed, 383; Green v. Goodall, 1 Cold. 404, 415; Murdock v. Leath, 10 Heisk., 173; Anderson v. Bewley. 11 Heisk., 29, 31; Stephenson v. Walker, 8 Bax., 289; Stroud v. McDaniel, 12 Lea. 619, 620; Kobbe v. Land Co., 117 Tenn., 315.

6. SAME.    Same.    Successive deeds registered upon defective probates become effective respectively as registered deeds twenty years after their respective registrations; case in judgment.

Under the rule in the preceding headnote, a deed registered upon a defective probate March 23d, 1851, became effective as a registered deed March 23d, 1871; and a deed of reconveyance registered upon a defective probate October 21st, 1856, became effective as a registered deed October 21st, 1876; and the subsequent deed of the reconveying grantor made to a

third party and registered upon a defective probate October 18th, 1859, became effective as a registered deed October 18th, 1879; so that the grantee under the reconveyance obtained the title as against such third party under such subsequently registered deed. (*Post, pp.* 345-347, 348.)

7. **DEEDS OF CONVEYANCE.** General warranty of title vests the warrantor's subsequently acquired title in the warrantor and those claiming under him.

But inasmuch as the deed to said third party, made by the said reconveying grantor after his such deed of reconveyance, as appears in the preceding headnote, was good and binding as to him, his heirs, and representatives from its delivery, and contained a general warranty of title, the title, subsequently acquired by the said reconveying grantor, by and under the will of the grantee under his said reconveyance, at once inured to the benefit of said third party and those claiming under him, and such reconveying grantor could not dispose of said title by will or otherwise, because he had no title subject to his disposition. (*Post, pp.* 346, 347.)

8. **REGISTRATION.** Upon defective certificate, after twenty years, affects purchasers with constructive notice of conveyances before acquisition of title, when.

Where the registration of a deed of conveyance of land, made upon a defective certificate of acknowledgment or probate, has become by the lapse of twenty years, under our statute (Shannon's Code, section 3761), a valid and effective registration, a purchaser thereafter is affected with constructive notice by reason of such registration; and while the general rule is that the purchaser does not have to go out of the line of title to ascertain whether each successive holder of the title had made any deed before he acquired title, yet he does have to see whether each such holder has conveyed after he acquired title, and he must follow that line to the limit to which it leads, and be held to notice of what is thereby shown. (*Post, pp.* 347-349.)

But see headnote 10.

Hitt v. Coal Co.

Code cited and construed: Sec. 3761 (S.); sec. 2898 (M. & V.); sec. 2084 (T. & S. and 1858).

Case cited and approved: Wilkins v. McCorkle, 112 Tenn., 688.

9. **DEEDS OF CONVEYANCE.** That "absolutely give, grant, quitclaim" is not a quitclaim deed, but conveys the grantor's whole estate.

A deed reciting that the grantors do thereby "absolutely give, grant, remise, release, and forever quitclaim unto the grantee" named "all such right and title as  *  *  *  the grantors have, or ought to have, in and to the" land described, is not a quit-claim deed; but, under the statute (Shannon's Code, section 3672) providing that every grant shall pass all the estate of the grantor, it conveys the grantors' whole estate in the premises, and refers to and must be taken in connection with the chain of title on which it is based whereby it must appear what was the estate owned by the grantors, and was conveyed by them. Notwithstanding the use of the word "quitclaim," such deed purports to convey, since the word "grant" is equivalent to the word "convey." (*Post, pp.* 349, 350.)

Code cited and construed: Sec. 3672 (S.); sec. 2812 (M. & V.); sec. 2006 (T. & S. and 1858).

Case cited and approved: Schwoon's Case, 124 Tenn., 176.

10. **REGISTRATION.** Ineffective registration is not constructive notice to a devisee of an undivided interest that a devise, to another devisee, of an undivided interest in the same land passed to his prior grantee.

Where a search of title would have shown that the testator had conveyed the entire tract of land to a grantee who reconveyed it to the testator by a deed whose registration became effective and valid before the registration of the deed to a third person, made by the said first grantee and reconveying grantor, became effective and valid, a devisee of an undivided interest in the land under said testator's will was not affected with

124 Tenn.—22

constructive notice of the said grantee's want of title, as was the case in the eighth headnote. (*Post, p.* 350.)

But see headnote 8.

11. **TENANCY IN COMMON.** One tenant's conveyance of a specific part is void if complicative, but not, if such part can be laid off without injury to the others, or if such tenant's interest was reduced to an undivided interest by the wrong of the one under whom they claim.

The rule that a deed by one tenant in common to a specific part of the common·land by separate metes and bounds is void, because the title of the other cotenants should not be so complicated without their consent, is not absolute, but is subject to the qualification that if the land can, in partition proceedings, be so laid off as to give the party in question his land at the place his deed covers, without injury to the others, this will be done. The tenants in common claiming under one whose misconduct caused the interest of such party to be reduced to an undivided interest in the land should not be permitted to use that situation to the disadvantage of such party or those claiming under him. (*Post, pp.* 350-353.)

Cases cited and approved: Reeves v. Reeves, 11 Heisk., 669, 674, 675; Aiken v. Suttle, 4 Lea, 138.

---

## FROM WHITE.

---

Appeal from the Chancery Court of White County.— T. M. McCONNELL, Chancellor.

ROBINSON, FANCHER & MEREDITH, for complainant.

W. T. SMITH, for defendants.

MR. JUSTICE NEIL delivered the opinion of the Court.

These were consolidated cases heard together in the chancery court of White county. There was a decree in favor of the defendants in both cases, and the complainant has appealed and assigned errors. Both suits involved the same land, but the controversy in the first suit turned mainly upon a question of boundary, or the location of a line. Then there was also a question of *res adjudicata* made in the arguments at the bar, but this matter not having been specially pleaded, it could not be considered. There were some other questions, but these appear also in the second case, and will be there examined. All of the points pertaining to the first case are disposed of in a memorandum opinion, and this case need not be further noticed.

The facts pertaining to the second case are substantially stated in the body of the opinion in addition to the various contentions discussed or treated. We need now state only some general matters which are necessary to a proper understanding of the particular facts referred to.

These actions were brought to recover 780 acres of land, part of what is known generally, in the record as the "1,200-acre Coville tract." Subsequently, it developed that a part of the 780 acres, that is, what is known as the "200-acre Elizabeth Allen tract," was conceded by the defendants, leaving under contest 580 acres of the Coville 1,200 acres, lying in White county. Of this 580 acres, the complainant in the course of the litigation

conceded to the defendants two small tracts known as the McKay and Welsh lands, lying within the boundaries of the 580 acres.

The Coville title or claim passed by a regular chain of conveyances to Catherine P. Hatch, and Marie L. Harback. They sold by deed, retaining a lien, to one Mitchell. He failed to pay the purchase money when due, and a bill was thereupon filed against him to enforce the vendor's lien. A decree was rendered in that case directing the land to be sold for the payment of the debt. It was sold subject to the two-year's right of redemption. At this sale the owners of the decree became the purchasers. They resided out of the county where the land lay. They subsequently transferred their right in the decree to Meredith and another, each of whom claimed a half interest. Meredith sold his right of redemption to complainant Hitt. Before the redemption period expired Hitt paid the redemption money to the clerk of the chancery court in which the land had been sold.

The first question arises on the validity of the redemption. We are of opinion that under our redemption statutes (Shannon's Code, sections 3813, 3823, and Acts 1897, ch. 132) the party whose land has been sold may pay the redemption money to the clerk of the court in which the land was sold. He may also pay it to the purchaser or any one claiming under him. Of course, if he pay it to the purchaser after he has notice of a transfer by him to another, the redemption would not be a good one. Likewise, if he pay it to one claiming under the

purchaser he takes the risk of the claim being valid. He is not bound to decide such a controversy actual or possible. We believe that a true construction, preserving the beneficent right of redemption, is that the debtor may always make certain his redemption by paying the redemption money, in case the land has been sold by the judgment or decree of a court, to the clerk of the court from which the sale was made; in other cases to the clerk of the circuit court.

Complainant having purchased Mitchell's right of redemption, and having redeemed under him, acquired his title. Mitchell claimed the Coville title which passed by a regular chain from Coville to him. Coville purchased from Hiram Spafford, Jr., and he from Hiram Spafford, Sr., the latter from Thomas Eastland, and Thomas Eastland from Thomas B. Eastland, and he was the grantee of the State.

At this point a contest arises between the Coville title and that under which the defendants claim. The defendants trace their title from the State through Thomas B. Eastland, Thomas Eastland, and Hiram Spafford, Sr. Then by the will of Hiram Spafford, Sr., to Hiram Spafford, Jr., an undivided one-half interest, and to E. A. Spafford, Hettie Gibbons, and Abbie A. Proctor, each an undivided one-sixth; then a deed from E. A. Spafford to his father, Hiram Spafford, Jr., conveying his one-sixth; then the will of Hiram Spafford, Jr., devising to E. A. Spafford his four-sixths or two-thirds; then the deed of E. A. Spafford to Abbie A. Proctor convey-

ing to her the said two-thirds, she thereby becoming vested with a five-sixths undivided interest; then the deed of Abbie A. Proctor of this five-sixths to F. T. Fancher, then the deed of the same five-sixths, made by F. T. Fancher, to the defendant Caney Fork Gulf Coal Company.

Hettie Gibbons died, and the defendant Rose Gibbons became heir at law of her undivided one-sixth interest. Rose Gibbons died, but, before her death, devised her interest to her father, defendant John W. Gibbons.

The question as to the superiority of these respective titles or claims of title depends upon the effect of three deeds; one of which Hiram Spafford, Sr., made to Hiram Spafford, Jr., on March 1, 1851; the deed of H. Spafford, Jr., of October 20, 1851, purporting to reconvey this land; and the deed of H. Spafford, Jr., to Edward Coville made on September 21, 1859. All three of these deeds had defective certificates, so that although each was put on record in the register's office, as below indicated, such registration could not operate as notice under our registration laws. It is not shown that Edward Coville had any notice of the deed of reconveyance made by H. Spafford, Jr., to H. Spafford, Sr.

We shall now state the foregoing facts with more particularity, and also what we conceive to be the legal principles controlling them.

The deed of H. Spafford, Sr., to H. Spafford, Jr., was made on March 1, 1851, and registered on a defective certificate on the 23d of March, 1851. The deed of H. Spafford, Jr., to H. Spafford, Sr., reconveying the same

land, was made October 20, 1851 and registered October 21, 1856, on defective certificate. The deed of H. Spafford, Jr., to Edward Coville was made September 21, 1859, and registered October 18, 1859, on defective certificate. The will of H. Spafford, Sr., went into effect March 14, 1876, the date of his death. By this will he purported to devise one-half of his land to his son Hiram Spafford, Jr., and one-sixth to his grandson, E. A. Spafford, son of Hiram Spafford, Jr., one-sixth to his granddaughter defendant Abbie A. Proctor, one-sixth to his granddaughter Hettie Gibbons, who left as her heir defendant Rose Gibbons. E. A. Spafford conveyed his one-sixth interest to his father, Hiram Spafford, Jr., by deed dated March 22, 1893. Hiram Spafford, Jr., died October 5, 1893, having devised his property to E. A. Spafford, by will which went into effect October 5, 1893. Under this will of his father, E. A. Spafford, on the face of the papers, acquired four-sixths or two-thirds undivided interest in the land which Hiram Spafford, Sr., purported to own, and by his deed E. A. Spafford conveyed the said two-thirds undivided interest to Abbie A. Proctor, March 2, 1901, and she thus with her own one-sixth interest devised to her by her grandfather Hiram Spafford, Sr., apparently became the owner of five-sixths undivided interest in the land. Abbie A. Proctor undertook to convey the said five-sixths to F. T. Fancher June 30, 1903. Abbie A. Proctor had no actual knowledge of the Coville deed when she purchased from E. A. Spafford,

but Fancher had knowledge of it, and E. A. Spafford had knowledge of it.

Now as to the Coville title, under the foregoing facts.

When H. Spafford, Jr., reconveyed the land on October 20, 1851, to H. Spafford, Sr., the title passed into the latter as between him and H. Spafford, Jr., and the heirs and representatives of the latter, notwithstanding the fact that the deed was registered on a defective certificate. But when prior thereto, on March 1, 1851, Hiram Spafford, Sr., conveyed to Hiram Spafford, Jr., the title passed into the latter notwithstanding the deed was registered on a defective certificate, and so was good not only against Hiram Spafford, Sr., but also against his heirs and representatives as well; and subsequently when Hiram Spafford, Jr., conveyed the land, on September 21, 1859, to Edward Coville, he, Coville, acquired through that deed the title which Hiram Spafford, Sr., had conveyed to Hiram Spafford, Jr., by the deed of March 1, 1851, notwithstanding the fact that on October 20, 1851, Hiram Spafford, Jr., had reconveyed the land to Hiram Spafford, Sr., the latter deed, as already stated, having a defective certificate, and it not appearing that Edward Coville had any notice of such deed, since the deed having a defective certificate was not entitled to registration, and the registration thereof on the certificate was not notice to him. But the Coville deed (Hiram Spafford, Jr., to Edward Coville, September 21, 1859) had also, as stated, a defective certificate, which did not entitle it to registration, and hence conveyed

only an inchoate title as to Hiram Spafford, Sr., though good as to Hiram Spafford, Jr., and his heirs and representatives.

Now by our statute, Sh. Code, section 3761, when a deed has been registered twenty years on a defective certificate, it becomes good, that is, a good registration. And see *Matthewson* v. *Spencer,* 3 Sneed, 513, same case, on second appeal, 4 Sneed, 383; *Green* v. *Goodall,* 1 Cold., 404, 415; *Murdock* v. *Leath,* 10 Heisk., 173; *Anderson* v. *Bewley,* 11 Heisk., 29, 31; *Stephenson* v. *Walker,* 8 Baxt., 289; *Stroud* v. *McDaniel,* 12 Lea, 619, 620; *Kobbe* v. *Land Co.,* 117 Tenn., 315, 98 S. W., 175. Under this rule the deed of Hiram Spafford, Sr., to Hiram Spafford, Jr., became a registered deed March 23, 1871; the deed of reconveyance from Hiram Spafford, Jr., to Hiram Spafford, Sr., October 21, 1876; the deed from Hiram Spafford, Jr., to Edward Coville, October 18, 1879. It is true that if Edward Coville's deed had been properly registered (that is, if the certificate to it had been good) when it was placed on the record October 18, 1859, or at any time before October 21, 1876 (the date when the registration of the deed of Hiram Spafford, Jr., to Hiram Spafford, Sr., became mature by the lapse of twenty years), he would have obtained perfect title, under our registration laws, notwithstanding Hiram Spafford's deed of reconveyance. *Per contra,* if the deed of reconveyance had been properly acknowledged when it was put to record on October 21, 1856, Coville would have obtained no title, because the registration would

have been notice to him. But both deeds, in the eye of the law, were unregistered. Whoever should first obtain legal registration, would, under our registration laws, obtain precedence. If either had had his deed subsequently acknowledged properly, and put on record, from that moment his precedence in title would have been attained. So between H. Spafford, Sr., and Edward Coville, it became a question which should first obtain registration. Neither obtained an actual subsequent registration; but both had deeds running at the same time for the *status* of registration by presumption of law under the twenty-year's statute. This *status* was first reached by the deed of reconveyance from H. Spafford, Jr., to H. Spafford, Sr., to wit, on October 21, 1876; the deed of H. Spafford, Jr., to Edward Coville reaching that *status* only on October 18, 1879. Therefore, as between H. Spafford, Sr., and Edward Coville, the matter must be treated as if after the former had received and registered his deed of reconveyance from H. Spafford, Jr., on October 21, 1876, Edward Coville had, in this view, taken from the latter a deed on October 18, 1879, when he had no title or semblance of title. It follows that as between H. Spafford, Sr., and Edward Coville, the latter obtained no title.

But when we come to the state of the title as between H. Spafford, Jr., and his heirs and representatives on the one hand, and Edward Coville on the other, a different principle obtains. The deed which he made to Edward Coville was good as to him, his heirs and repre-

sentatives. It was a registered deed on October 18, 1879; but it was good against him, his heirs and rep-, resentatives from its delivery on October 18, 1859. They could not dispute it. It was a deed also containing a general warranty of title. When by the will of his father he acquired a one-half interest in this land, on March 14, 1876, that interest at once inured to the benefit of Coville and those claiming under him; so, when he acquired the one-sixth interest of E. A. Spafford by deed of the latter March 22, 1893; therefore, when Hiram Spafford, Jr., on October 5, 1893, undertook to devise this land to E. A. Spafford, he had nothing he could lawfully devise. He was estopped to devise it, and E. A. Spafford was estopped to receive it, both by the fact that he was a representative of his father, and by the fact that he had actual knowledge also of the Coville deed, as shown by his deposition. But when E. A. Spafford conveyed this two-thirds interest acquired (or purporting to have been acquired under his father's will) to Abbie A. Proctor, she had no actual knowledge of the Coville deed. Was she affected with notice from the registration books? We think she was. Tracing back along the line of title, she would have found (1) the will of Hiram Spafford, Jr.; (2) the deed of E. A. Spafford conveying one-sixth to Hiram Spafford, Jr.; (3) the will of Hiram Spafford, Sr.; (4) the deed from Thomas Eastland to Hiram Spafford, Sr.; (5) the deed of Thomas B. East- land to Thomas Eastland; (6) the grant of the State of

Tennessee to Thomas B. Eastland. Having reached the point where Hiram Spafford, Sr., acquired title it would have been the duty of the searcher to ascertain if he had conveyed it. We must suppose the search to have been made by Mrs. Proctor in 1901, when she purchased from E. A. Spafford. The searcher then would have found that H. Spafford did make a deed to Hiram Spafford, Jr., in March, 1851, and that Hiram Spafford, Jr., made a deed to Coville in 1859. He would also have found that in October, 1851, Hiram Spafford, Jr., had made a deed of reconveyance to Hiram Spafford, Sr., and that all of these had become mature by the statute of twenty years, respectively, on March 23, 1871, October 21, 1876, and October 18, 1879. He would have known that under the rule of law applicable to the subject (*Wilkins* v. *McCorkle,* 112 Tenn., 688, 80 S. W., 834), we must presume, in the absence of proof to the contrary, that Coville had no knowledge of the deed of reconveyance made by Hiram Spafford, Jr., to Hiram Spafford, Sr. He would have seen that the deed made by Hiram Spafford, Jr., to Coville was a warranty deed. From these facts he would have deduced that Hiram Spafford, Jr., and his heirs and representatives were estopped from claiming title as against Coville and those claiming under him. Now, while the general rule is that the searcher does not have to go out of the line of title to ascertain whether each successive holder of the title has made any deed before he acquired title, yet he does have to see whether each such holder has conveyed after he acquired title, and he must follow that

line to the limit to which it leads, and be held to notice of what is thereby shown.

It is insisted that Mrs. Proctor would be affected with notice also because the deed she received from E. A. Spafford was a quitclaim deed. If such were the fact, probably the modern and better doctrine is that such deed is not notice. However, we do not decide this point. Our own cases when they are all taken together are not quite clear. But the deed is not a quitclaim. Its language is: "Do by these presents absolutely give, grant, remise, release and forever quitclaim, unto the said grantee (Abbie A. Proctor) all such right and title as we, the said grantors, have, or ought to have, in and to the following described piece or parcel of land," etc. Notwithstanding the use of the word "quitclaim" this is a deed purporting to convey, since it uses also the word "grant," which is equivalent to the word "convey." Nor is it made a quitclaim deed by the use of the words "all such right and title as we the said grantors have or ought to have," etc. Such a deed under our statutes, Sh. Code, section 3672, purports to convey the grantors' whole estate in the premises. Such a deed of course refers to and must be taken in connection with the chain of title on which it is based, whereby it must appear what was the estate owned by the grantor and conveyed by him; but so does every other deed when we are considering the question of absolute title. There is a difference, of course, under statutes of limitation affecting real estate, where a deed upon its face may purport

to convey an estate in fee without reference to any other deed, and so constitute an assurance of title under which seven years adverse possession will give title; but such deeds also may be in the form of the present one, as we have recently held, and by reference will incorporate a prior deed or deeds, so as with it or them to make an assurance of title purporting to convey an estate in fee. *Schwoon's Case*, 124 Tenn., 176, 135 S. W., 785, opinion at present term.

As to the one-sixth interest which Mrs. Proctor received under the will of her grandfather, Hiram Spafford, Sr., and the one-sixth interest which Hettie Gibbons, mother of Rose Gibbons, received under the same will, they are not affected by what has been said concerning the two-thirds interest derived from Hiram Spafford, Jr. It is true that the same search for title which we have referred to would have shown that H. Spafford, Sr., had conveyed the whole land in controversy to H. Spafford, Jr., and that the latter had conveyed it to Edward Coville, but it would also have shown that it had passed back into H. Spafford, Sr., by a deed superior to that which H. Spafford, Jr., had made to Coville because first registered, and would have failed to show that these two-sixths were affected by the conduct of H. Spafford Jr., since they did not pass to him under the will of his father, Hiram Spafford, Sr., and so could not be affected by any estoppel against him and his heirs and representatives.

Nor do we think that the defendants can be relieved of the conclusion we have reached in respect of the H.

Spafford, Jr., two-thirds by what has been urged upon the subject of tenants in common. We shall here state the contention upon this subject. It is: That a deed by one tenant in common to a specific part of the common land by separate metes and bounds, is void, because the title of the other co-tenants should not be so complicated without their consent. The rule is not absolute, but is subject to the qualification that if the land can, in partition proceedings, be so laid off as to give the party in question his land at the place his deed covers, without injury to the others, this will be done. This has long been the rule where one tenant in common erects improvements upon the common property. *Reeves* v. *Reeves,* 11 Heisk., 669, 674, 675; *Aiken* v. *Suttle,* 4 Lea, 138. The principle is the same.

There is also another view of the matter. At the time Edward Coville took his deed from H. Spafford, Jr., the latter, according to the record so far as it could legally affect Coville, was the owner of all of the shares in the land, that is, of the whole of the Coville 1,200 acres, as well as the rest of the grant (No. 6,235) of which it was a part. The situation whereby his interest was reduced to an undivided interest was owing to the misconduct of H. Spafford, Jr. Those claiming under the latter should not be permitted to use that situation to the disability of Coville, or those claiming under him, if by any means the shares of the parties can be so arranged as to give the holder of the Coville title that interest in kind. But really, when we consider the terms of the deeds under

which defendants sold, the question cannot be said to arise; since in the deed which Mrs. Abbie A. Proctor made to F. T. Fancher, and in that which he made to defendant Caney Fork Gulf Coal Company, the Coville 1,-200 acres is conveyed as a separate tract, from the residue of the land covered by grant No. 6235. This description as it appears in the Abbie A. Proctor deed is as follows: "The following described tract or parcel of land lying and being in the Thirteenth civil district, White county, Tennessee, and bounded as follows, to wit: The first tract beginning on a stake standing in the center of the old Ross road, with black oak pointers, being the northwest corner of entry No. 2504, which entry was made in White county, Tennessee; thence south 624 poles to a black oak with hickory, dogwood and black oak pointers on the west side of Big Laurel creek, southeast corner of grant No. 6235, granted by the State of Tennessee to Thomas B. Eastland; thence west 634 poles to a black oak and hickory pointers on the east bank of Dry creek, the southwest corner of said grant No. 6235; thence north with the west boundary line of said grant No. 6235 to the Ross road, being the southwest corner of what is known as the Edward Coville 1,200-acre tract; thence with the south boundary line of the Coville tract to the southwest corner of the Allen Straight tract; thence with the Allen Straight south boundary line to the beginning. The second tract beginning at two cherry trees and two hickory trees in the boundary line of Thomas Storms' land 160 poles west of his southeast corner, running thence south to the center of the Ross turnpike

road 372 poles; thence east along the Ross turnpike road until it strikes a new contemplated road; thence along said contemplated road until it strikes the Ross turnpike, then down said turnpike until it strikes the land sold by Hiram Spafford to Allen Straight; thence north with Straight's line to the north boundary line of said grant, No 6235; thence west with said line to the beginning, containing 1,200 acres." The same description appears in the deed of F. T. Fancher to the defendant Caney Fork Gulf Coal Company. The first tract above described being also mentioned as a tract of 2,300 acres. It is perceived that in the description above copied the land now in controversy is spoken of as the Edward Coville 1,200 acres, and is used as a part of the northern boundary of the 2,300 acres. The parties have thus themselves separated the land in controversy from the 2,300 acres, and there is no difficulty in decreeing to complainant a two-thirds undivided interest in the 1,200 acres, and this will accordingly be done.

This, however, is subject to the following, viz.: Complainant concedes on the record to the defendants the McKay and Welch tracts contained within the boundaries of the 1,200 acre Coville tract, and these tracts must be excluded from complainant's recovery. There is also a tract of 300 acres mentioned on complainant's map as the "Blasedell 300 acres," and on defendant's map as the "Phifer or Carver 300 acres." This is the same tract conveyed by John Blasedell to Hiram Spafford, Sr., March 23, 1853, in a division between them on

that day of two tracts each of 300 acres. These two tracts were conveyed to John Blasedell and Hiram Spafford, Sr., on October 21, 1850, by Eliza Dale and Polly M. Wilson. It is recited in the deed that one of these tracts (that which John Blasedell subsequently conveyed to Hiram Spafford) lay within the grant No. 6235. As stated, on a division between John Blasedell and Hiram Spafford, Sr., the latter became the full owner of this tract on March 23, 1853. But on January 9, 1852, Hiram Spafford, Sr., conveyed an undivided one-half interest in this 300 acres to Stephen Carver with warranty of title. Stephen Carver is therefore on this record the owner of an undivided one-half interest in that 300 acres which is outstanding in him. This Carver one-half interest in the 300 acres referred to will be excluded from complainant's recovery; but he is entitled to recover a two-thirds undivided interest in the other undivided one-half interest thereof.

Complainant will have a decree for a two-thirds undivided interest in the 580 acres, part of the tract known in the record as the "Coville 1,200 acres," less the McKay tract, the Welch tract, and the Blasedell or Phifer and Carver 300-acre tract. As to the latter tract he will have a decree for two-thirds of an undivided half thereof. He will have a decree for the 200-acre Elizabeth Allen tract.

The costs of this court and of the court below will be equally divided between the complainant and the defendants, except John W. Gibbons, Catherine P. Hatch, and Marie L. Harback, who will pay no costs.