## James Potter, Bettie Potter, Jerome Potter, Ida Potter Walden, R. T. Potter, Shade Potter, George Potter, W. R. Ramsey, Dewey Ramsey, Jane Potter Elam, Sol Potter, Clinchfield Coal Corporation, Clinchfield Northern Railway of Kentucky v. F. T. D. Wallace.

## Clinchfield Northern Railway of Kentucky v. J. S. Cline and J. M. York.

(Decided October 28, 1919.)

### Appeals from Pike Circuit Court.

1. Appeal and Error—Persons Not Parties.—Persons, who are not parties to a suit, can not appeal from a judgment rendered in it.

2. Joint Tenancy—Denial of Title of Co-Tenant—Estoppel.—One, who jointly with another, procures a survey and a patent for a tract of land, and then occupies the land, claiming title under the patent, is estopped to deny the title of his co-tenant on account of any claim of title, which he might have made, previous to the granting of the patent as against his co-tenant.

3. Joint Tenancy—Co-Tenants.—A joint tenant of lands, in possession, holds the possession for himself and his co-tenants, and whatever benefits accrue to the title by his possession, are for the equal benefit of his co-tenants.

4. Adverse Possession—Limitation of Actions—Co-tenant—Notice.—Before the statute of limitation will begin to run, in favor of the adverse possession of a joint tenant against his co-tenant, the

one asserting adverse possession must give his co-tenant notice of his adversary claim of title, or his acts must be such as amount to such notice.

5.   Joint  Tenancy—Conveyance  by—Effect.—A   conveyance  by  a tenant, in common, or joint tenant, by metes and bounds, of a portion of the jointly owned lands, bestows upon the vendee a right, which is subordinate to the rights of the other co-tenants.

6.   Damages—Action to Recover Assessment of Damages in Condemnation Proceeding.—A land owner can not recover from a railroad company an assessment for damages, in his behalf, made by commissioners in a proceeding to condemn a right of way, where the proceeding was dismissed by the corporation before the report was approved, or the condemnation adjudged.

7.   Joint Tenancy—Conveyance by—Equity of Vendee.—When a tenant, in common assumes to convey a portion of the jointly owned lands, in fee, the vendee does not acquire any right, which can be allowed to prejudice the rights of the co-tenants of his vendor, but, he does have such equities, that, if in a partition of the lands, the tract conveyed to him, can be assigned to the portion set apart to his vendor, as his share, without injury to the rights of the co-tenants of his vendor, he will be protected to that extent.

AUXIER, HARMON & FRANCES and MORRISON, MORRISON & ROBERTSON for appellants.

J. M. YORK and J. S. CLINE for appellees.

OPINION OF THE COURT BY JUDGE HURT—Reversing.

The judgment appealed from herein, was rendered on the 14th day of June, 1918, in the action, wherein the appellees, J. S. Cline and J. M. York, were the only plaintiffs and Clinchfield Northern Railway of Kentucky, was the only defendant, and is the second above stated action.

The first above stated action wherein F. T. D. Wallace was the plaintiff and the appellants were the defendants, has been pending in the trial court, since the 10th day of July, 1905, and the appeal herein is not taken nor sought from any judgment rendered therein, and, in fact, no judgment has been rendered in that action since February 11th, 1907.  None of the appellants, except Clinchfield Northern Railway is a party to the action, wherein the judgment, appealed from, was rendered, and the appellees, Cline and York, are not parties of record to the first above styled action.  The two actions were never consolidated, nor heard nor tried together, so far as the record demonstrates, and no order

of submission for trial and judgment, appears in the action of Wallace against Potter, etc. Hence, the appeal of each of the appellants, except the Clinchfield Northern Railway is dismissed and the record of the action of F. T. D. Wallace against James Potter, etc., is directed to be stricken. The only appeal herein, which can be considered, is that of the appellant, Clinchfield Northern Railway against the appellees, Cline and York, from the judgment rendered in the action between them, as the judgment in that action, is the only one appealed from, and the Clinchfield Northern Railway will, hereinafter, be designated as the appellant, and Cline and York, as the appellees.

The motion of appellant to file a copy of patent to Corley, Smith & Co., and to constitute a part of the record is sustained. The controversy, herein, arises from the action of the appellant, in constructing its line of railway through, what is known as the brakes of the Big Sandy river, and near the Russell's Fork of that stream, over the lands, which are embraced in a patent, calling for one hundred acres of land, and which was granted to F. T. D. Wallace and Andrew Potter, jointly, on the 20th day of January, 1888. The patent was founded upon a survey made for Wallace and Potter, on November 27th, 1883. The appellees claim to be the owners of an undivided one-half interest in the lands, embraced by the patent, and that they were the owners of such moiety, at the time the appellant constructed its railroad, and sought by an action in equity instituted by them on September 17th, 1914, to recover, from appellant, as they now contend, one-half of the value of the lands, which appellant converted to its use, for the construction of its railway, and one-half of the damages, which resulted to the remainder of the tract, but, as appellant contends to recover from it one-half of the damages which were assessed by commissioners in a condemnation proceeding, which was instituted by it, but dismissed before the report of the commissioners was confirmed, or a judgment rendered in its favor authorizing its appropriation of the land.

This difference of opinion between the parties, as to the character and purpose of the action, will be later considered. The trial court adjudged, that the appellees recover of appellant, the sum sued for, which was $5,000.00, with interest from the date of filing their suit,

and that they were the owners of an undivided one-half interest in the land embraced in the patent, and the Clinchfield Coal Corporation the other one-half, outside of sixty-eight and one-fourth acres, which the appellant had taken and converted to its use for the purposes of its railroad, and excluded the appellees from the use or possession of it. This had the effect of determining that appellees were the joint owners with the Coal Corporation of the portion of the lands, which the railroad had taken and used for the construction and use of its road. The appellant had, by its answer, denied, that appellees owned any interest in the lands, which it appropriated for its right of way, and the question of appellees' ownership, is necessarily determined by a decision as to whether or not they were the owners of any interest in the lands, embraced by the patent to Wallace and Potter. The only claim of title to the lands, made by appellees, was as vendees of Wallace, and the validity of their title will be first determined.

(a) The evidence proves, that Andrew Potter resided upon and had in his actual possession some portion of the land, from shortly after the Civil War of 1861-1865, until the year, 1883, but, as to what portion of the land, he held in possession, or whether he made any claim of title to it previous to that time, does not satisfactorily appear. Whether previously to 1883, he made any claim of title, or not, his possession of it could have only extended to his enclosures, and the extent of them does not appear, and on November 27th, 1883, he joined with Wallace in procuring the lands to be surveyed for a patent, which was granted to them jointly in 1888. The custody of the patent was had by Potter, who thereafter claimed to have title to the lands by virtue of the patent, and, shortly before June, 1905, he represented to appellees, that Wallace was a joint owner with him, of the lands, and the deeds made by him to his children for portions of the lands in 1904 and 1905, each made reference to the patent as the source of his title. Andrew Potter continued to reside upon the lands, embraced by the patent, until his death, which occurred, as can best be determined from the evidence, in 1905. There is nothing in the record to indicate, that Andrew Potter ever asserted claim to the land, included in the patent, as against the right of his co-tenant, Wallace, to the ownership of an undivided one-half of it, and there is no fact, from which

it can be inferred, that he was asserting claim to the land, to the exclusion of his co-tenant, until the execution by him of deeds to Roland T. Potter and James Potter, respectively, on July 26, 1904, and a deed to Geo. W. Potter, on October 15, 1904, and thereafter a deed to another of his heirs, which purported to convey certain portions of the lands, by metes and bounds, to the vendees, but, in each of these deeds, he refers to the patent to Wallace and himself, as the source of his title to the lands.    There is an entire failure in the evidence to show, that, if Andrew Potter, previous to 1904, ever contemplated asserting title to all of the interests in the lands to the exclusion of the right of Wallace, he never gave any notice of it to Wallace.    Neither are any acts of Potter proven, while in the possession of the land, which would be reasonably calculated to put Wallace upon notice, that he was claiming or asserting dominion over the lands, or claiming any right therein, which was antagonistic to the right of Wallace.    On June 22, 1905, Wallace executed a deed to appellees, by which he conveyed his interest in the lands to them.

(b) The above stated vendees of Andrew Potter, on July 28, 1905, conveyed the lands, which had been conveyed, or attempted to be conveyed to them, respectively by Andrew Potter, to H. C. Morrison, who, on July 2, 1906, executed deeds of conveyance for them to the Clinchfield Coal Company, which, on April 5, 1917, conveyed them to Clinchfield Coal Corporation, which in turn, has executed to appellant a deed of conveyance for the lands, which it is now using for its right of way.

(c) Asserting title to the lands used for its railway purposes, as a vendee of the Clinchfield Coal Corporation, the appellant insists, that the appellees have no title to any part of the land, covered by the patent to Wallace and Potter, upon the theory, that Potter had acquired title to the land by adverse possession, at the time, the patent was granted to him and Wallace, and for such reason, the Commonwealth having no title, at the time the patent was granted that Wallace acquired none by it, and, if he did so, that Potter held the lands adversely to him, thereafter for more than the statutory period and whatever title the patent may have conferred upon him, was thereby extinguished, and Wallace having no title at the date of his conveyance to appellees, that they acquired no title from him.

The first of these contentions is untenable for the reasons heretofore given, and in addition, thereto, Potter's joint procurement with Wallace of the patent, and his joint acceptance of it with Wallace, estopped him from denying to Wallace the interest in the land, which the patent purported to grant to him, as he does not occupy the same attitude as one, who having a claim of title to lands, procures for himself an outstanding title to the lands, and does not by reason of the procurement of the outstanding title, give up the one, he already has. Being a joint tenant with Wallace of the lands, embraced by the patent, he held the possession of the lands for himself and his co-tenant, and whatever benefits accrued to the title by his possession, accrued to them equally. Taylor v. Cox, 2 B. M. 434; Young v. Adams, 14 B. M. 129; Moss v. Currie, 1 Dana, 267; Coleman v. Hutcherson, 3 Bibb, 210; Malone v. Malone, 8 R. 692; Vermilion v. Nickle, 114 S. W. 270; Bloom v. Sauger, 121 Ky. 308; Gill v. Faunteroy, 8 B. M. 177; Poage v. Chinn, 4 Dana, 50.

(d) A joint tenant or tenant in common in possession, may oust his co-tenant, and after fifteen years of such adverse possession, the title will mature in him, but, before the statute will begin to run in his favor against the right of his co-tenant, he must have given his co-tenant notice, that he was holding and claiming the joint property as his individual property, and antagonistic to the right of his co-tenant, or his acts, while in possession, must be such as to amount to such notice. Gossman v. Donaldson, 18 B. M. 241; Russell v. Marks, 3 Met. 45; Greenhill v. Biggs, 85 Ky. 155; 7 R. C. L. 851; Rose v. Ware, 115 Ky. 420; Gillispie v. Osborne 3, A. K. M. 77; Barrett v. Coburn, 3 Met. 510; Russell v. Mark, 3 Met. 37; Bush v. Fitzgerald, 125 S. W. 716; Young v. Adams, 14 B. M. 127; Coleman v. Hutcherson, 3 Bibb. 209.

The facts show, that Potter held the possession of the land adversely to all except Wallace, but his holding was for Wallace and himself, jointly, and under the title granted by the patent, which made them joint owners, at least such was the character of his holding for more than fifteen years after the patent was issued, and until their adversary holding created the title in them jointly, and superior to any other outstanding title to the lands. Eldridge v. Martin, 164 Ky. 503; McLaurin v. Salmons, 11 B. M. 96; Beeler v. Coy, 9 B. M. 312; Smith v. Lock-

ridge, 3 Litt. 19; Jones v. Child, 2 Dana, 25; Fox v. Hinton, 4 Bibb 559; Bert & Brabb L. Co. v. Sackett, 147 Ky. 236; Bassett v. Lush, 156 Ky. 493; Big Sandy Co. v. Rainey, 162 Ky. 240.

If the conveyance of portions of the lands by metes and bounds, by Potter, could be considered as evidence of his intention to claim the land as his individually, the time elapsing between that period and the bringing of this action, has not been sufficient to bar the title of Wallace, or his vendees.

(e) For the reasons above stated, the claim of title to the lands appropriated by appellant, within the patent to Wallace and Potter, by conveyances to appellant from the grantees of the patent to Corley, Smith & Co. or any other outstanding title, does not affect the title of appellees to an undivided one-half of the lands covered by the patent to Wallace and Potter. The patent to Corley, Smith & Co. was granted in 1871, and is prior to the patent under which appellees, as vendees of Wallace, claim. The patent to Corley, Smith & Co. contains over four thousand acres, but, in addition to the fact, that the evidence offered to show, that it covered the lands, in controversy, in this action is extremely vague, indefinite and unsatisfactory, appellant, as well as appellees insist, that Potter held the actual adverse possession of the lands, in controversy, for more than the statutory period, and the evidence proves, that he held them under the title granted by the patent to him and Wallace. Hence, we conclude, that the court was not in error, when it held, that the appellees, under the deed to them from Wallace, were the owners of an undivided one-half of the lands embraced in the grant to Wallace and Potter, except as will be hereinafter stated.

(f) The appellant, in addition to the claims of title to the lands, appropriated by it, within the Wallace-Potter patent, heretofore considered, claimed title to the lands, taken by it for the purposes of a right of way, under several conveyances to different railroad corporations, for rights of way, made, either by Andrew Potter, alone, or by persons claiming title under him, and in which neither the appellees, nor their vendor joined.

These conveyances, without enumerating them, can not affect the rights of the appellees. A tenant in common, may make conveyances by metes and bounds of portions of the jointly owned property, and the grantees in them will acquire certain rights under the conveyances,

but whatever rights are acquired by them, are subordinate to the rights of the other joint owners of the lands, who do not join in them. The vendees, in such conveyances, acquire, only, the right of their vendor in the boundaries described, but, they acquire no right, which will prejudice the rights of the non-assenting co-tenants. Hence, it is unnecessary to further consider the grants of rights of way, relied upon, in which neither the appellees nor their vendor joined. However, on the 15th of April, 1902, Wallace, appellees' vendor, by deed, conveyed to the Big Sandy Railway Company, his entire interest, in a strip of land, extending through the lands embraced in the Wallace-Potter patent, the strip to be fifty feet on each side of the center line of the vendee's railroad right of way as then located, and to include such additional land as was necessary for cuts and fills. This deed was of record in the county clerk's office of Pike county, at the time, Wallace sold and conveyed his interest in the lands to the appellees. Thereafter, on April 25, 1902, Andrew Potter, by deed, conveyed to the Big Sandy Railway Company, for right of way through the lands, the same lands which were embraced in the conveyance to it by Wallace.

This right of way, by mesne conveyances, was conveyed to appellant. The appellant being the sole owner of that strip of land was entitled to erect its railroad, upon the land, thus conveyed for the purposes of a right of way, but, it appears, from the maps and evidence, touching it, that appellant, in building its road through the lands, erected it, only partially upon this right of way. The center line, of its present operation crosses the right of way granted, three or four times, and instead of appropriating only one hundred feet, with such additional land, as was necessary for cuts and fills, the width of its appropriation is, in some instances, from three to four hundred feet. It, however, should only be responsible, in damages, touching its appropriation of the lands, not included in the right of way conveyed to its predecessor, by Wallace and Potter, whose separate deeds amount to their joint act. The court in its judgment seems to have ignored the appellant's right to appropriate the lands embraced in the right of way, thus conveyed to its predecessor, in title. It, also, appears to have awarded damages for the appropriation of lands, which are not within the Wallace-Potter patent.

We are unable to determine the proper location of the
Wallace-Potter patent, from the record, or what por-
tion of the lands, embraced by it, have been appropriated
by appellant, since the evidence in regard to the begin-
ning corner is delivered in such a way, that it is impos-
sible to say from it, whether the witnesses, when they
depose, that it was above or below the Potter residence,
mean its location, above or below the residence, with
respect to the course of the river, or mean, that it is
above or below the residence, with respect to the resi-
dence and the mountain side. With respect to the only
map on file, which purports to show the Wallace-Potter
patent, and the course of the railroad, there is no evi-
dence, as to where upon the map the appellees contend,
that the beginning corner of the patent is.

(g) On the 8th day of July, 1912, the appellant insti-
tuted in the county court, a proceeding under the statute,
to condemn for the purposes of its right of way, a cer-
tain boundary of land, which is the same as that de-
scribed in appellees' petition. Appraisers were ap-
pointed, who made a report, in which they assessed the
damages to which the owners of the land was entitled,
at the sum of $10,000.00. The report was filed and the
land owners were summoned to show cause, why the re-
port should not be confirmed, but, before the report was
confirmed, the proceeding was dismissed by the appel-
lant, on March 17, 1913, and no judgment was ever ren-
dered in the proceeding. The appellees instituted this
action, in equity, against appellant, alleging, that they
were the owners of an undivided one-half of the land,
sought to be condemned and their interest in it was
worth the sum of $5,000.00, and reciting the condemna-
tion proceedings, the appointment of the appraisers, and
their report, and that appellant took possession of the
land, under and by virtue of the condemnation proceed-
ings, but, then dismissed its action, and refused to pay
to appellees the one-half of the assessment, which was
$5,000.00. They elected to treat the acts of appellant as
a conversion of the land to its use, under the condemna-
tion proceedings, and sought judgment for the one-half
of the assessment, and the court below seems to have
awarded it; while appellant stood upon its claim of sole
ownership. The appellant, by answer, denied that it
took possession of the land, by virtue of the condemna-
tion proceedings, or that appellees owned any interest
in it, but, that it took possession because of having ac-

quired title otherwise and had dismissed the proceedings to condemn before confirmation of the report and before judgment. It now insists, that appellees can not maintain the suit, because they sought to recover an award, which was never made. That appellees cannot recover an award of damages in the action, there is no doubt. In the first place, no award was ever made, and in the second, an examination of section 839, Ky. Stats., demonstrates, that a railroad corporation can not lawfully take possession of land condemned for its purposes, until the report of the assessment of damages to the owners, has been confirmed, and the damages paid, or tendered to the owners of the lands. Carrico v. Colvin, 92 Ky. 342; Asher v. L. & N. R. R. Co., 87 Ky. 391; Chicago, St. Louis & N. O. R. R. Co. v. Sullivan, 24 R. 860; C. S. R. T. Ry. Co. v. Piel, 87 Ky. 267. If the proceeding is dismissed before a judgment, confirming the report of the assessment of damages, is made, the land owner has suffered no injury. He has the land the same as before the institution of the proceedings. It has been expressly held by this court, that a corporation may abandon its purpose of taking property, which it has already had condemned, without incurring any liability for the damages awarded. Manion v. L. St. L. & T. R. Co., 90 Ky. 491; Cornwall v. L. & N. R. R. Co., 104 Ky. 29; Cave's Admr. v. Calmes, 3 A. K. M. 956.

If a corporation, however, without any condemnation proceedings, takes possession of the lands of another and appropriates them to its purposes and injures or converts them to its own use, the owner, of course, is not without remedy. The petition, in the instant action, seems to have been drawn upon the idea, that the appellees were entitled to recover the amount assessed for damages, by the commissioners in the proceeding, which was dismissed, and the prayer is for the same sum, but it is, also alleged, that the plaintiffs are the owners of an undivided one-half of the lands appropriated, and that the damage, suffered by the plaintiffs for such appropriation, is the amount sued for; that the lands were wrongfully appropriated by the appellant, with a prayer for general relief.

The pleadings, when a trial is had upon the merits, are sufficient to authorize the court to grant the parties the relief to which they may show themselves entitled. Heckling v. Gehring, 30 R. 1198; Ky. River Coal Co. v. Frazer, 161 Ky. 374; Alexander v. Owen, 136 Ky. 420.

(h) The appellant, in its answer, alleged the fact of the then pending action of F. T. D. Wallace v. James Potter, et al., for a partition of the lands embraced by the Wallace-Potter patent, in severalty, between the joint owners, and, in the prayer, asked that the trial of this action be delayed until the determination of the action of Wallace v. Potter, et al.; or else, that the action for partition, between Wallace and the Potters be consolidated and tried with this action, and, it is now, insisted for appellant, that as it was a vendee by metes and bounds of the Clinchfield Coal Corporation, which was a tenant, in common, with appellees, and the owner of an undivided one-half of the lands covered by the Wallace-Potter patent, that the court was in error in not requiring a partition made between the appellees and the Coal Corporation and the assignment to the share of the latter, as its vendor, of the portion of the common estate, which had been conveyed to it by the Coal Corporation, as a part of the share of the latter, and thus have saved appellant harmless. Whether, when one tenant in common, assumes to convey with a fee simple title, by metes and bounds, a portion of the lands jointly owned, the deed is void and not to be respected, or is valid, except to the extent, that it affects the rights of the other tenants, in common, is a subject upon which all the authorities do not agree, but, the weight of authority is in accordance with what appears to be a practical equity, that such a deed creates equities in favor of the grantee, and he will be protected to the extent, that it can be done, without injury to the tenants, in common, who are not parties to the deed. Such a deed from one co-tenant, in common, will not be permitted to prejudice or injure the rights of the other co-tenants, but, in a partition of the jointly owned lands, the portion embraced by the deed will be set apart to the grantee, as a part of the share, to which his vendor is entitled, if it can be practically done, without injury or prejudice to the rights of the co-tenants, who are not parties to the deed. Pellow v. Arctic Iron Co., 47 L. R. A. (N. S.) 573; Freeman on Cotenancy, sections 199, 205; Emeric v. Alvarado, 90 Cal. 444; Young v. Edwards, 33 S. C. 404; Cameron v. Thurmond, 56 Tex. 22; Beale v. Johnson, 45 Tex. Civil App. 119; Hitt v. Caney Fork, etc. Co., 124 Tenn. 334; Bogges v. Meridith, 16 W. Va. 208. If such action could be practically done, in the instant case, and a partition of the lands covered by the Wallace-Potter patent, excluding the portion hereto-

fore conveyed to the Big Sandy Railway Company, be made, between appellees and the Coal Corporation, in such a way, that the portions appropriated by appellant, should be assigned to the share of the Coal Corporation, and an undivided one-half of the lands considering quality, quantity and value assigned to appellees, and upon which the appellant has not encroached, the appellees would have no cause of complaint, unless, and to the extent, that the conversion of the portions of the lands wrongfully appropriated by appellant for its right of way, injured the entire tract of land. If upon partition certain portions of the lands wrongfully appropriated by appellant, or all of them, fell to the share of appellees, they would be as a sequence entitled to all the damages to such portions.

The appellant, however, did not move the court to consolidate the action, with that for a partition of the lands, and in which the appellees seem to be the real parties although not upon the record; did not allege, that the lands appropriated by it, could be assigned to the share of its vendor, without injury to appellees; did not seek a partition nor the relief which it now complains that the court should have granted it.

(i) For the errors of the court in adjudging that the appellees were entitled to recover the one-half of the assessment for damages reported by the commissioners, when no condemnation was ever made effective; and for adjudging, that they should recover one-half of the damages to lands, which were not within the Wallace-Potter patent; and one-half of the damages to lands, appropriated by appellant, within the patent, and which were within the right of way conveyed to the Big Sandy Railway Company, the judgment is reversed, as upon the record as presented to the court, the appellees were only entitled to recover one-half of the damages, according to the measure provided by section 836, Ky. Stats., for the lands appropriated for its right of way, which were within the Wallace-Potter patent, and without the strip, which had been conveyed to the Big Sandy Railway Company, within the patent, and one-half the damages, if any, to the remainder of the tract. The cause is remanded for proper proceedings, not inconsistent with this opinion, and if the parties desire, they should be permitted to make any necessary amendments of their pleadings. The clerk in taxing the costs will not charge appellees with one-fourth of the costs of the transcript,

on account of it including the record of Wallace v. Potter, et al., which is stricken. The judgment is therefore reversed and cause remanded for proceedings not inconsistent with this opinion.