### W. C. BINGHAM et al., Appellants,

### v.

### Flannery BROOKS et al., etc., Appellees.

Court of Appeals of Kentucky.

March 23, 1962.

Rehearing Denied Sept. 21, 1962.

H. M. Tye, Barbourville, for appellants.

Lester L. Parrott, Pineville, H. M. Sutton, Corbin, Samuel H. Cole, Frankfort, for appellees.

MILLIKEN, Judge.

Inability to agree on a means of paying for the funeral of elderly Kitty Brooks Bingham resulted in her devoted three adult children and surviving spouse precipitating this litigation, the record of which comprises nearly four hundred typewritten pages.

When T. C. Brooks died intestate in 1905, his children, Flannery Brooks and Tommie Brooks, became the owners of his one-half undivided interest in a tract of Knox County land subject to the dower interest of their mother, Kitty Brooks, who owned the remaining one-half interest in the land. Subsequently, Kitty Brooks married W. C. Bingham and one son, Evy Bingham, was born to this union. When all of her children were grown their mother attempted to partition the land as if she were the sole owner and in 1936 executed deeds of 50 acres to Flannery Brooks and

25 acres to Evy Bingham, respectively, and held the remaining approximately 50 acres for her daughter, Tommie Brooks Burger, who lived in Cincinnati, without the formality of conveyance. When Tommie's stepfather, W. C. Bingham, offered her $500 in 1946 for her interest in the land, Tommie promptly executed a deed of general warranty to him and received the $500. Although Kitty's husband, W. C. Bingham, signed his wife's deeds to her children, Flannery and Evy, in 1936, his name did not appear in the granting clause or certification of acknowledgment in either deed. Nevertheless, Evy Bingham took possession of the 25 acres designated for him, farmed it, and has been in possession of it ever since. On the other hand, Flannery pocketed the deed his mother sent him, visited her often on trips from his home in Cincinnati, helped her financially over the intervening years knowing of her attempted division of the land and at no time raised an issue about it until 1955 when confronted by how and from what source his mother's funeral was to be paid. By that time his stepfather, W. C. Bingham, who asserts no interest in the land, having conveyed the land he bought from Tommie Burger to his son Evy Bingham, apparently was financially unable to pay his wife's funeral expenses and, although appointed administrator of her estate, failed to qualify because of inability to furnish bond. As a result of his failure to qualify, Etta McCarthy, sister of Kitty Brooks Bingham, then was appointed and qualified as administratrix of the estate.

While he was the ostensible administrator of the estate, W. C. Bingham filed an action against Flannery Brooks and Tommie Burger for the recovery of a $200 note and $800 which he alleged they removed from a homemade money belt on the body of Kitty Bingham, and in the action obtained an attachment against Flannery's interest in the land. Flannery and Tommie retaliated by enjoining W. C. Bingham and his son, Evy, from removing timber from the land. At this point, Etta McCarthy, as administratrix, intervened and sought sale of the land in order to obtain funds for the payment of the funeral bill. It turned out that the funeral director had turned over the money belt to Tommie for safe keeping, and the bulk of its contents— about $50 less minor and proper deductions —was delivered to the administratrix. The trial court consolidated the actions for trial, dismissed the attachment, canceled the various deeds and ordered the land sold for the payment of the funeral expenses. The cancellation of the deeds and order directing the sale of the land are at issue in this appeal; the Binghams claiming title to their portion by adverse possession and estoppel. The trial court based its action on the theory that Kitty's action was fraudulent, that the deeds she gave were void, and that any deeds given by a cotenant prejudiced the other cotenants.

The 1936 deeds from Kitty Brooks Bingham to her sons, Flannery Brooks and Evy Bingham, for 50 acres and 25 acres, respectively, recite the receipt of $200 and $100 as the considerations therefor and were recorded. After obtaining the deed from Tommie Burger for $500 in 1946, W. C. Bingham, joined by his wife, Kitty Brooks Bingham, conveyed the property in 1949 to Evy Bingham and Kitty Brooks Bingham in consideration of the payment of taxes and love and affection, reserving to Kitty timber and mineral rights for life. In 1954, Kitty and Evy conveyed his original 1936 tract of 25 acres to Mae Bingham, Evy's wife, apparently for the sole intended purpose of putting title in Mae's name. Whether the recited considerations for these conveyances were actually received is not clear except Tommie Burger received $500 for her conveyance to W. C. Bingham. It is contended by the Binghams that the portions set out by Kitty Brooks Bingham in 1936 were laid out on the land and that the various division lines were shown to Flannery and Tommie and that Flannery even helped W. C. Bingham set rocks and mark trees to establish the boundaries to his portion. Flannery denies this

and asserts his silence over the years was dictated by his desire not to disturb his mother.

█ In canceling the deeds the trial court found them void and that their obtention was fraudulent. We find no actual fraud in the picture. When Kitty Brooks Bingham undertook to partition the land in 1936, her acts were open and after notice and there was no motive to deceive; she merely misconceived her legal power to do what she did. Evy Bingham's known and exclusive occupancy of the 25 acres deeded to him was clearly under a claim of right to the fee simple title, hostile to Flannery and Tommie for the statutory period, KRS 413.010, and entitled him to fee simple title in the 25 acres by adverse possession, for Flannery and Tommie both had knowledge of their mother's attempted partition of the land in 1936 and knew that Evy was occupying his 25 acres under her deed to him which purported to convey a fee simple title. In other words, Flannery and Tommie knew the facts, acquiesced, and must be charged with the consequences of their acquiescence so far as Evy's interest is concerned; they knew that Evy was not occupying the 25 acres as a tenant in common with them, but as a claimant of a fee simple title under his mother's deed.

So far as Kitty Brooks Bingham's 1936 deed to Flannery is concerned, it conveyed only Kitty's undivided interest in that portion of the land. Potter v. Wallace, 185 Ky. 528, 215 S.W. 538; Peabody Coal Company v. Rutter, Ky., 283 S.W.2d 842. Since no deed was ever executed to Tommie by her mother, Tommie's 1946 deed to W. C. Bingham conveyed only her undivided interest in the portion she conveyed to him.

█ It is our conclusion that there was no effective partition of the land by Kitty Brooks Bingham to Flannery and Tommie, for neither of them exercised any possession over their designated portions for any period of time and certainly not in a way which would entitle them to assert any interest by adverse possession. Cress v. Conley, 143 Ky. 441, 136 S.W. 1022; Riggsby v. Montgomery, 208 Ky. 524, 271 S.W. 564. After excluding the 25 acres adjudged herein to Evy by adverse possession, the remaining land should be sold as directed by the judgment, the funeral bill of the Hart Funeral Home paid, and the remaining proceeds of the sale, if any, apportioned among Flannery, Tommie and Evy, calculated as their interests appear in accordance herewith. The evidence supports the trial court's judgment as to the $200 note and the alleged $800 in the money belt.

The judgment is affirmed in part and reversed in part.