CASE 47—APPEAL—MAY 24.

# Covington Short-Route Transfer Railway Co. v. Piel.

APPEAL FROM KENTON CIRCUIT COURT.

1. EMINENT DOMAIN—COMPENSATION.—Neither the State, nor a corporation, under its authority, can be permitted to take private property for public use without first making compensation to the owner; and the execution of a bond of indemnity to the owner is not such compensation as is contemplated by section 14, of article 13, of the Constitution. Therefore, so much of the act of April 11, 1882, providing for the condemnation of private property for railway purposes, as permits the company to take possession of the property upon execution of a bond to perform the judgment of the court, is in violation of the Constitution of Kentucky.

2. SAME—MEASURE OF DAMAGES.—In the condemnation of property for railway purposes, where the property taken is the home or place of business of the owner, the jury, in estimating the value, are not confined to the market value of the property, but may take into consideration the inconvenience and loss resulting to the owner from being deprived of his home or place of business.

In this case, the court having instructed the jury to find for the owner the real value in money to him of the premises, it was not error for the court to refuse to instruct them not to take into consideration any consequential injury or inconvenience to the defendant in the taking of his property, as the only damages the defendant could have sustained in addition to the value of the property was the inconvenience and loss resulting from being deprived of his home and place of business.

3. SUPERSEDEAS—DAMAGES.—The appellee having, by his cross-appeal and supersedeas, stayed the writ of possession and enjoyed the use of the premises for the value of which the judgment appealed from was rendered, he is not entitled to the ten per cent. damages ordinarily allowed upon the affirmance of a judgment which has been superseded.

HALLAM & MYERS FOR APPELLANT.

Brief withdrawn.

WM. GOEBEL FOR APPELLEE.

The provision of the statute authorizing a private corporation to take possession of property condemned for its use upon the execution of a

bond merely, is unconstitutional. The bond provided for is not "just compensation previously made" within the meaning of the Constitution. (Gen. Stats., ed. 1887, p. 281; Cooley on Const. Limit., pp. 694-697; Thompson v. Grand Gulf R. & B. Co., 3 Howard (Miss.), 240; Bloodgood v. Mohawk, &c., R. R. Co., 18 Wend., 9; s. c., 31 Am. Dec., 313, 320, and note, p. 375.)

There must at least be a payment of the money into court, if not into the hands of the property-owner, before the corporation can take possession. (Arnold v. Cov. and Cin. Bridge Co., 1 Duv., 372; Tracy v. E., L. & B. S. R. R. Co., 80 Ky., 259.)

The cases decided by this court in which it is held that the damages need not be actually paid before the property is taken are cases in which the property was condemned for the benefit of a municipality and not for the benefit of a private corporation. (Gashweller's Heirs v. McIlvoy, 1 A. K. Mar., 184; Jackson v. Winn, 4 Litt., 322; Duncan v. Louisville, 8 Bush, 98.)

As to the distinction between that class of cases and the class to which this case belongs: Sanborn v. Belden, 51 Cal., 266; Mill on Law of Eminent Domain, secs. 126, 130, 132, 136.

CHIEF JUSTICE PRYOR DELIVERED THE OPINION OF THE COURT.

This proceeding was had on the application of the appellant, the Covington Short-Route Transfer Railway Company, asking for the appointment of commissioners to assess the damages resulting from the condemnation of appellee's house and lot, in the city of Covington, for railway purposes.

The commissioners appointed proceeded to value the property under the act approved April 11, 1882, and assessed the damages at seven thousand seven hundred and fifty dollars, and each party excepting to their award, a jury was empaneled in the county court and a verdict rendered in favor of the appellee for eight thousand dollars.

The case was then carried by an appeal to the circuit court, and a verdict rendered for eight thousand two hundred and fifty dollars, and is now in this court on an appeal from the circuit court.

The appellant, the Railway Company, declining to pay or tender the amount of the judgment, because it regarded the sum allowed as excessive, executed a bond with surety to the appellee in accordance with the seventh section of the act of April 11, 1882, for double the amount of the damages assessed, conditioned to perform the judgment of the circuit court, or that of any court to which the case might thereafter be appealed, and, on motion, was awarded a writ of possession.

The seventh section of the act is as follows: "Upon the confirmation of the report of the commissioners by the county court, or the amount of damages by said court as herein provided, and the payment or tender to the owners of the amount due as shown by the report of the commissioners when confirmed, or as shown by the judgment of the county court when the damages are assessed by said court, and all costs adjudged to the owner, the railroad company shall be entitled to take possession of said land or material, and to use and control the same for the purpose for which it was condemned as fully as if the title had been conveyed to it. But when an appeal shall be taken from the judgment of the county court by the railroad company, it shall not be entitled to take possession of the land or material condemned, unless it shall execute to the owner a bond with surety, to be approved by the county court, in double the amount of the damages assessed, conditioned to perform the judgment of said court, and of any court to which the case may thereafter be appealed, which bond shall be filed with the papers in the case." (General Statutes, chapter 18, 1887.)

When the case reached this court the appellee prayed a cross-appeal, and although a bond had been executed by the railway company as provided by the seventh section of the act of 1882, was permitted by this court to execute a supersedeas bond, having the effect to stay the writ of possession until the case was disposed of on the appeal. The right of the appellee to supersedeas on his cross-appeal is one of the questions raised, and to be disposed of on the final hearing. It is insisted by the appellee that so much of the seventh section of the act of April 11, 1882, as permits the railway company to take possession of his property, and apply it to the use of the company upon the execution of a bond of indemnity only, is in violation of section 14 of article 13 of the Constitution, providing that "no man's property shall be taken or applied to public use without the consent of his representatives, and without just compensation being previously made to him." While the statute does not, in express terms, deny to the owner the right to supersede the judgment in a case like this, it provides that the corporation, when taking the appeal, may take possession of the property upon executing a bond to the owner in double the amount of the damages assessed, excluding necessarily his right to prevent the public use by superseding the judgment, and thereby delay the progress of the work until the end of the litigation.

This seventh section gives the right of entry upon the payment or tender of the money to the owner when the company proposes to abide by the judgment, and to afford the company a remedy by an

appeal when it may deem the award of damages excessive; it further provides the execution of a bond with surety, that the owner is compelled to accept if approved by the court, with the right of the company, after its execution, to enter and apply the property to its use. This latter provision of that section, the appellee maintains, is unconstitutional, and if so, there is no reason why the supersedeas should have been withheld by this court.

It is essential, in taking private property for public use, that compensation should first be made. It is, says Mr. Mills, " in the nature of a compulsory purchase of the property of a citizen for the purpose of applying it to a public use,"· and whether the corporation desiring that use can have the property valued, and then take it from the possession of the owner by executing a bond that may have the effect to reduce the value, and at the same time compelling the owner to risk the solvency of the parties to the obligation, is the question presented here.

In considering this question no reported case is to be found in this State where a private corporation has appropriated the property of the citizen to its use upon the execution of a bond containing a mere promise to pay the damages sustained at the end of a litigation by which the value of the property is to be determined. This court has held, in more than one case where property was condemned for the benefit of a municipality or for county purposes, that if the owner was *made secure* by the execution of a bond with surety, it was such compensation as was contemplated by the Constitution. In the case of Gash-

weller's Heirs v. McIlvoy, 1 Mar., 84, the damages were secured by a direction to pay the sum allowed out of the county levy. In the case of Jackson v. Winn's Heirs, 4 Litt., 322, the property was taken for an incorporated town, and in Duncan v. Mayor of Louisville, 8 Bush, 98, the mayor was authorized to sell bonds to pay the value of the property condemned.

There is a distinction recognized by many authorities between a taking by a municipal subdivision of the State and a taking by a private corporation. The reason given is, that in the one case the owner may resort to the public treasury of the State or the municipal government for his money, with the power in the State, if the treasury should be empty, to coerce by taxation a sum sufficient to make the compensation; while as to a private corporation, the owner is compelled to risk the solvency of the parties to the bond, with no other remedy for the value of his property taken than a suit at law in the event of their failure to pay. This early doctrine, "that compensation need not precede the taking," was established, says Mr. Mills, in his work on Eminent Domain, § 124, for the reason that the property was taken mainly for the State, and the payment to be made out of the public treasury.

Whether or not this reason controlled the decisions of this court in the earlier cases is not now necessary to inquire, for it is manifest that a mere security in the bond of a corporation can not be regarded as *just compensation previously made the owner* within the spirit and meaning of the Bill of Rights. That the citizen would be more likely to receive compensation

from the State out of an abundant treasury, and by reason of its power to enforce payment by exactions from its citizens in the form of taxation, than from a private corporation owning its corporate property, or the individual security given by it, will be readily conceded; but in what manner this protects the citizen who has been deprived of his property in his constitutional rights it is difficult to comprehend. The security may be more ample in the one case than in the other, and still his right of property has been destroyed in its appropriation to a public use, without just compensation previously made, and all that is left him, whether due by the municipality, county or corporation, is the right, if a voluntary payment is not made at the end of the litigation, to take coercive measures for the recovery of the value of his property to which he was clearly entitled from the municipality or the private corporation before either could use it for public purposes.

Viewed in any aspect of the case, whether taken by the sovereign or by the corporation under sovereign authority, it is a destruction of the constitutional guaranty for the protection of private property to appropriate it, without the consent of the owner, to a public use without first making compensation to him in money for the value of the property of which he has been deprived. We are aware that in the condemnation of private property for the construction of railroads, serious injury must often result to the public by a delay in the progress of the work until the question of compensation is determined by litigation. The necessity for an immediate entry in

vol. 87—18

all such cases is apparent, still it could not have been intended by the framers of the Constitution that a mere security for payment should be deemed equivalent to payment in fact. That just compensation previously made authorized the corporation under legislative authority to take private property upon a credit by executing a bond, payable at the end of a litigation, is a doctrine that can not be sanctioned by this court. The language of the Bill of Rights does not admit of such a construction.

In this case the homestead of the owner had been condemned, and the appellant, not satisfied with the assessment of damages, is permitted by the act of 1882 to take possession of his dwelling, his business house and the lot upon which they stand, with no other compensation than the bond of the company, that may or may not be paid when the litigation terminates. He may be compelled to sue on the obligation to recover the compensation that the Constitution in express terms provides he shall have before his property is taken.

If the Bill of Rights provided that the citizen should be made secure before his property could be appropriated to public use, there might be some reason in requiring him to look to a bond of indemnity for his compensation, and the earlier cases seem to have proceeded on the idea that this security was what had been guaranteed to the citizen and nothing more, when it is plain, we think, from the language used in that instrument, that just compensation previously made means the payment in money to the

owner of the value of his property, whether for the sovereign, a municipality, county or corporation, before it can be taken from him.

Where the damages are assessed under the act of 1882, the money may be paid or tendered to the owner, and if he declines to receive it, his own act entitles the company to enter and appropriate the property condemned for the public use. "The Legislature might as well declare a bond to be good compensation at the end of the condemnation proceedings as at the beginning. Hence, possession cannot be given simply on an offer to give, or on the giving of a bond." (Mills on Eminent Domain, § 136, 2d ed.)

Mr. Cooley, in his work on Constitutional Limitations, says: "It is not competent to deprive him (the citizen) of his property and turn him over to an action at law, against a corporation which may or may not prove responsible, and to a judgment of uncertain efficacy." (Const. Lim., 562.)

This court, in the case of Arnold v. The Covington Bridge Company, reported in 1 Duv., 372, speaking through Chief Justice Robertson, said: "But the Constitution constructively requires an impartial assessment by a judicial process of the actual value in money, and full payment, before private property shall be appropriated to public use." Authorities might be given sustaining a like construction of constitutional provisions similar to ours, and to require the citizen to look to a mere written promise to pay the compensation to which he is entitled, is, in our opinion, a perversion of the plain meaning of the Bill of Rights.

Objections were made in the court below to an instruction given at the instance of the appellee, and also exceptions taken to the refusal of the court to give instructions asked by the appellant. The court told the jury "they must find from the evidence the real value in money to the owner of the premises as they were actually situated on the twelfth of July, 1887, and they will find for the owner the value aforesaid." The appellant asked the court to say to the jury that they should not take into consideration any consequential injury or inconvenience to the defendant in the taking of his property. The last instruction the court refused to give, but gave the instruction asked by the appellee.

The appellee owned no property adjacent to the property condemned, and the damages he sustained, if any, in addition to the value of the property taken, was the inconvenience and loss resulting from his being deprived of his home and place of business, and to say that no such facts should enter into the estimate of value would be unjust to the owner, and place him in a condition where he had sustained actual injury other than the mere market value of his property, without affording him any remedy for the wrong. This character of case is unlike an appropriation of a strip of land where the mere market value is the criterion, the taking working no other injury.

Here the owner and his family have been deprived of their homestead, and his place of business taken from him, and to allow him simply what such property is worth, or would bring in the market, would not compensate him for the injury sustained.

The instruction for the appellee was proper, and while the jury might have been told that a mere ideal value placed on the premises by the owner should not control them in their verdict, yet it is evident that, in ascertaining the damages, the value of his home and business house to the owner, under the circumstances, should have entered into the estimate. It is not certain, however, from this record, that the jury did more than to give the owner the marketable value of his premises.

. The witnesses for the railway company fixed the market value at from five to seven thousand dollars. Those for the appellee fixed the market value as high as nine thousand three hundred and sixty-one dollars. The jury returned a verdict of eight thousand two hundred dollars. The appellee was allowed to show that, in addition to the market value proven, he had sustained other loss, in having to abandon his place of business, to the extent of two or three thousand dollars. We perceive no objection to this testimony. The location of appellee's business house, its convenience for his labor and those who patronized him, were facts tending to enhance the value of the property to the appellant, and of which he ought not to have been deprived.

There have been in effect three different verdicts in this case fixing the value of appellee's property. The commissioners fixed the value at seven thousand seven hundred and fifty dollars, the jury in the county court at eight thousand dollars, and the jury in the circuit court at eight thousand two hundred dollars. After so many findings on the one issue, with such a small

difference in each verdict, we see no reason for disturbing the judgment in the absence of any evidence tending to show that either finding was excessive. The only question made by the appellee on his cross-appeal was his right, as the company had appealed, to supersede the writ of possession; this he was allowed to do, and perceiving no error to the prejudice of the appellant, the judgment is now affirmed.

The ten per cent. damages will be denied, as the appellee has, by his supersedeas, stayed the writ and enjoyed the use of the premises, for the value of which the judgment was rendered. No reversal is asked on the cross-appeal.