## Long Fork Railway Company v. Sizemore, et al.

### (Decided April 25, 1919.)

### Appeal from Floyd Circuit Court.

1. Eminent Domain—Appeal and Error—Evidence.—The court's ruling in permitting defendant's witness to testify over plaintiff's objection as to damage done to lands not sought to be condemned by the construction of the railroad on the land taken, if erroneous not prejudicial, since the witness testified no such damage had been done.

2. Eminent Domain—Personal Judgment for Damages.—A railroad company which under its power of eminent domain institutes proceedings to condemn land, may after judgment elect to take or not the land condemned, and an absolute personal judgment for the amount of damages awarded is not proper before the exercise of this right of election,..but after it has elected to take the land and is in possession thereof under the provisions of section 839, Kentucky Statutes, such a judgment for any excess in the damages awarded over the amount deposited in court to enable it to enter upon the land, is proper.

3. Damages—Excessive Damages.—A verdict of $5,700.00 as damages for taking 4.88 acres of land out of the center of a tract of 48 acres of bottom land worth from $300 to $600 an acre held not to be excessive.

HAGER & STEWART and SMITH & COMBS for appellant.

A. J. MAY for appellees.

OPINION OF THE COURT BY JUDGE CLARKE—Affirming.

This is a condemnation proceeding, the commissioners in the county court having fixed the defendant's damages for 4.88 acres of land taken at $3,000.00, to which

both parties filed exceptions and a trial before a jury in the county court resulted in a verdict and judgment for defendant in the sum of $5,500.00. From that judgment the railway company appealed to the circuit court, and, having deposited the $5,500.00 with the clerk of the court, took possession of the land condemned and, at the time of the trial in the circuit court, had completed the construction of its railroad, except ballasting the track, and was operating construction trains thereon. The trial in the circuit court resulted in a verdict fixing defendant's damages at $5,700.00, upon which judgment was entered directing the master commissioner to convey to plaintiff the land condemned, ordering the $5,500.00 deposited in court by plaintiff to be paid to defendants and giving them a personal judgment against plaintiff for the remaining $200.00 and costs.

Plaintiff seeks a reversal of that judgment upon three grounds: (1) the admission of incompetent evidence; (2) because a personal judgment, alleged to be unwarranted, was given against it for the sum awarded as damages, and (3) because the verdict is excessive.

1. The evidence admitted, alleged to be incompetent, is to the effect that by the construction of the railroad on the right of way condemned the waters of Beaver creek will be in times of high water forced out of their channel on to a part of defendant's lands adjacent to but outside of the strip condemned. However, the court refused to admit evidence of damages that might thereafter result from high water and only permitted the witness to testify as to such damages as had resulted before the trial, and as the witness said there had been no high water and no such damage had occurred up to that time, it is manifest appellant was not prejudiced by the court's ruling even if erroneous, and we need not decide whether evidence of this character was competent.

2. It is unquestionably true that a corporation vested with power of eminent domain having undertaken to condemn land for its necessary use under sections 835-840, inclusive, Ky. Stats., may, after judgment and before possession is acquired, elect to take or not the land in question (Sandy Valley & E. R. Co.v. Bentley, 161 Ky. 55), and therefore an absolute personal judgment against it for the amount assessed as damages is ordinarily improper; but this right of election, however it may be in other jurisdictions, when once exercised, is under the provis-

ions of our Constitution and statutes binding upon the corporation, if consented to, expressly or impliedly, by the landowner. Any other conclusion would not only permit the condemning party to play fast and loose with the landowner and the courts, but would plainly annul the constitutional and statutory guaranties to the owner of his title and possession against forcible interference even under a right of eminent domain, except and until actual payment is made therefor. The Bill of Rights and sec. 242 of the Constitution expressly so provide, and sec. 839 of the statutes permitting the corporation, after judgment in the county court establishing its right over the land involved and fixing the damages, to pay the amount assessed into court, take possession of the land and appeal from that judgment was enacted to permit the company to exercise its right of election to take or not the land required by it, before a final determination of the damages it must pay therefor, as to which question both parties are given the right of appeal; but even this right to take possession before final determination and payment of the damages may be exercised by the corporation only where the owner waives his constitutional right of actual previous payment to him or where the deposit in court amounts to a tender to him. (Bushart v. County of Fulton, 183 Ky. 471; Carrico, &c. v. Colvin, &c., 92 Ky. 342; Covington S. R. T. R. Co. v. Piel, 87 Ky. 267; Chicago, St. L. & N. O. R. R. Co. v. Sullivan, 24 Ky. L. R. 860; Hamilton v. Maysville & B. S. R. R. Co., 27 Ky. L. R. 215; Beckham v. Slayden, 32 Ky. L. R. 944.)

Appellant having exercised its right of election and taken possession of the land, in which appellees have acquiesced, doubtless because of the deposit in the court and the bond for the appeal, and the deposit having been made by appellant under sec. 839 of the statutes, "subject to the order of the court," it can not thereafter make another and different election with reference to taking the land, nor can it object to the court ordering the payment upon final judgment of that deposit to the landowners. Neither can it object to the personal judgment against it for the excess of the damages finally awarded over the deposit, because that was the very question the proceedings, after the question of possession had been disposed of by the action and acquiescence of the parties, submitted for adjudication. Neither party is objecting to that part of the judgment directing the master to con-

vey the land condemned to appellant, and after appellant has forcibly taken from appellees the possession of their land by this proceeding and procured judgment for title thereto as well, it would be a peculiarly unwarranted conclusion indeed that would deny to the court having jurisdiction of the parties and the subject matter, the right to dispose of the whole litigation by making effective by its judgment the verdict of the jury on the very issue submitted to it. Hence there is no merit in the contention the court erred in the personal judgment against appellant.

3. The remaining question is whether or not the verdict is excessive. The land condemned is a strip 100 feet wide, except at one end, where it is 150 feet in width, through the center of a bottom of very fertile and valuable land, which contains about 48 acres. The two parcels into which the bottom is thus cut, are pointed at each end and one parcel is only from 48 to 60 feet in width for a distance of some 500 or 600 yards. The witnesses for the company fixed the value of the land actually taken at about $300.00 per acre and the damages to the rest of the tract at $1,500.00, or a total of $3,000.00; the witnesses for appellees, about the same in number, placed the value of the land at $600.00 to $800.00 an acre, and the whole damage at $6,000.00 to $8,000.00. All agree substantially that the whole bottom of 48 acres is about the best body of land in that vicinity and that such land, because of its scarcity in that section, is not on the market frequently enough to enable them to state its market value with any degree of accuracy and hence the values are fixed by all the witnesses almost if not exclusively from a knowledge of its fertility and adaptability to farming purposes, which, under the circumstances, was the best available standard rendering such evidence competent. (Sandy Valley & E. R. Co. v. Bentley, *supra.*)

Upon this evidence the verdict of the jury, if they accepted that offered by appellees rather than appellant, as they might have done, can not be held excessive or flagrantly against the evidence as it is less than the amount fixed by these witnesses. But counsel argue we ought to know as matter of common knowledge that the $5,700.00 allowed by the jury for less than five acres of land, or more than $1,100.00 an acre, is grossly excessive. To begin with, the $5,700.00 is not alone for the five acres taken, but that sum includes the damage done to the

remaining 43 acres of bottom land which is now divided through its center into two parcels both of which are pointed at each end, which fact both from the uncontradicted evidence and common knowledge we know materially depreciated the value of the remaining land both as to its salability and its use as farming lands. The value placed upon this land by the witnesses is from $300.00 to $600.00 an acre, which we must accept, and as does not seem to us unreasonably high in view of the proven facts that because subject to overflow it can be cultivated every year, is capable of producing a hundred bushels of corn to the acre annually, and that such lands are extremely scarce and valuable in that section of the mountainous portion of the state. So even if we accept $300.00 an acre as its value before the strip of five acres was taken out of the center of the 48 acre tract, the value of the land actually taken is about $1.500.00, and the damages to the remaining 43 acres was fixed at $4,200.00, or a little less than one-third of its original value, and this percentage of depreciation we are unable to say is excessive as a matter of common knowledge.

Moreover two juries, after viewing the premises and hearing the evidence, have fixed the total damages at practically the same amount, and if as they may have done consistently, they believed the land was worth as much as $600.00 an acre, the percentage of depreciation of the remaining 43 acres was placed at only $1,700.00 or ten per centum of its original value, and certainly this can not be said to be excessive or unreasonable as a matter of common knowledge, since even appellant's witnesses fixed this item of damage at $1,500.00.

Wherefore the judgment is affirmed.