DANIEL ROSENTHAL AND MARY ROSENTHAL, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 64905. Filed April 28, 1959.

*Daniel Rosenthal, pro se.*
*Christopher J. Ray, Esq.,* for the respondent.

TIETJENS, *Judge:* This proceeding involves a deficiency in income tax for the taxable year 1953 in the amount of $624.40.

The issue for decision is whether petitioners received by way of initial payments less than 30 per cent of the selling price of their transportation business, thus entitling them to report its sale on the installment basis under section 44(b) of the 1939 Internal Revenue Code.

#### FINDINGS OF FACT.

During 1953, Daniel Rosenthal (hereinafter referred to as the petitioner) and Mary Rosenthal, husband and wife, resided in Philadel-

phia, Pennsylvania. They filed a joint Federal income tax return for that year with the director of internal revenue at Philadelphia.

During 1951, and prior thereto, petitioner was engaged in the business of transporting property by motor vehicle in interstate commerce, operating under a Certificate of Public Convenience issued by the Interstate Commerce Commission (hereinafter referred to as the Certificate).

In an agreement of sale, dated June 28, 1951, petitioner agreed to sell to Charles J. and Louis A. Hartman, trading as Hartman Bros. of Camden, New Jersey, his entire interest in this Certificate, and further agreed to sell them the equipment and goodwill of his business, in consideration for the payment by Hartman Bros. of $25,000. The sale price was made payable: $4,000 upon execution of the agreement, the balance to be paid within 10 days after approval of the transfer of the Certificate by the Interstate Commerce Commission, and delivery by petitioner to Hartman Bros. of the various assets contracted for, by payment of $650 in cash, and delivery to petitioner of a note in the amount of $20,350 payable in 30 monthly installments of $650 and a final installment of $850. The entire agreement was conditioned upon the Commission's approval of the transfer of the Certificate from petitioner to Hartman Bros. Should that transfer not be approved, the contract was to be null and void, and petitioner was to refund the $4,000 payment made upon execution of the agreement. As security for repayment of that amount, petitioner agreed to deliver in escrow a bill of sale to Hartman Bros. for the assets contracted for, with certificates of title thereto properly endorsed for transfer, to be held pending approval or disapproval. In the event of Commission approval, the bill of sale and title certificates were to be delivered to Hartman Bros. upon delivery of their note and payment of $650 cash to petitioner. In the event of Commission disapproval, the bill of sale and title certificates were to be redelivered to petitioner, providing that, within 30 days of notice of such disapproval, he repaid to Hartman Bros. the $4,000 payment already made by them. Should he fail to make timely repayment, the bill of sale and certificates of title were to be delivered to Hartman Bros., who were then authorized to sell such equipment as necessary to collect the $4,000 plus costs of sale. Upon recovery of this amount, Hartman Bros. were to redeliver to petitioner the certificates of title to any assets not sold, plus any amounts collected in excess of the $4,000 and necessary costs of sale.

Pursuant to that agreement, Hartman Bros. paid petitioner the sum of $4,000. This payment was made in the form of two checks, one in the amount of $500, and the other in the amount of $3,500.

On July 5, 1951, petitioners received a letter from their attorney, Harold J. Elkman, a portion of which is set forth below:

As you no doubt realize by this time the check in the sum of $3,500.00 which I received from Charles J. Hartman and Louis A. Hartman, payable to my order as your attorney, was turned over to and deposited by Gross Plumbing & Rubber Co., Inc. You previously borrowed the sum of $3,500.00 from them. This check made a total payment of $4,000.00. They, therefore, have delivered to me their check in the sum of $500.00. Gross Plumbing & Rubber Co., Inc., have a judgment recorded against you as referred to in the above Court, term and number. This judgment note signed by both of you empowers any attorney upon collection to add 10% thereof for his fee of collection. I have therefore from the sum of $500.00 which I have received deducted the sum of $350.00 as my collection fee. In addition thereto, I have deducted the sum of $14.75 representing the Prothonotary's costs for entering the judgment and the satisfaction fee. This judgment was satisfied of record today. There is therefore a balance remaining in my possession in the sum of $135.25. I am retaining this amount, on account, for services rendered to you in connection with the sale of the business referred to above. When my services are completed in this matter I will send you a final statement. * * *

An application to transfer the Certificate was filed with the Interstate Commerce Commission, which was denied on December 21, 1951. That denial was based in part upon a finding by the Commission that the consideration provided to be paid for the interstate rights was excessive.

In an attempt to eliminate objections of the Commission to the transfer, the parties entered into another agreement on March 4, 1952. Among other things, this agreement provided for a total contract price of $20,850. This amount was to be paid by crediting to Hartman Bros. the $4,000 previously paid to petitioner, the balance to be paid within 10 days after approval of the transfer by the Interstate Commerce Commission and delivery by petitioner to Hartman Bros. of the bills of sale, certificates of title, and the property bargained for, and was to be paid: $500 in cash, and $16,350 by note payable in 30 monthly installments of $525 and a final installment of $600. In the event of the Commission's disapproval of the transfer, the provisions of the June 28, 1951, contract, dealing with repayment by petitioner of the $4,000 to Hartman Bros., were to become effective.

On August 6, 1952, the Interstate Commerce Commission denied the parties' petition for reconsideration of its original disapproval of the transfer. That denial was based in part upon a finding that the consideration provided for the transfer of the interstate operating rights was excessive.

By an agreement dated November 3, 1952, petitioner agreed to sell to Hartman Bros. all his interest in the Certificate for the sum of $5,000, payable $4,000 upon execution of the agreement, receipt of which was acknowledged therein, and $1,000 within 30 days of approval by the Interstate Commerce Commission of the transfer. In the event of the Commission's disapproval, the $4,000 was to be refunded, and all further terms of the agreement void.

On November 10, 1952, the parties executed a supplement to their agreement of November 3, whereby petitioner agreed to sell to Hartman Bros. the equipment and goodwill of his business for the sum of $17,000, payable as follows: $3,500 concurrent with the execution of the agreement, receipt of which was acknowledged therein, and a note for $13,500 providing for weekly installment payments of $150 and bearing interest at 5 per cent per annum to be delivered 10 days after final approval of the transfer by the Interstate Commerce Commission and upon delivery by petitioner of the property. The supplemental agreement was conditioned upon approval of the transfer by the Interstate Commerce Commission, and, if such approval was not obtained, the agreement was to be null and void and the $3,500 paid by the buyer to the seller was to be refunded. As security for the repayment of the $3,500, petitioner agreed to allow the escrow agent previously designated to retain the bill of sale and certificates of title then in his possession to be delivered to Hartman Bros. If, upon disapproval of the transfer by the Interstate Commerce Commission, petitioner failed to make repayment of the $3,500, Hartman Bros. then were authorized to sell such equipment as necessary to reimburse themselves for that amount. Finally, it was agreed that the provisions of the agreements of June 28, 1951, and March 4, 1952, were canceled and superseded by the original and supplemental agreements of November 1952.

On May 22, 1953, the Interstate Commerce Commission approved the application for transfer of the operating rights from the petitioner to Hartman Bros.

On their return for the taxable year 1953, petitioners reported the sale of the transportation business as the sale of a capital asset held for more than 6 months. They returned a total sale price of $22,000, claimed a basis of $12,927.20, and returned a profit of $9,072.80, or 41 per cent of the total sale price. They reported receipt of $6,792.60 by way of principal payments by Hartman Bros. during 1953, and, electing to report the transaction on the installment basis, returned 41 per cent thereof, or $2,784.97, as a long-term capital gain.

In determining the instant deficiency, respondent explained in part as follows:

The capital gain reflected in schedule D of your return, in the gross amount of $2,784.97, resulting from the sale of your transportation business, was erroneously reported on the installment method because the initial payments received in cash or the equivalent exceeded 30 percent of the selling price within the meaning of section 44(b) of the Internal Revenue Code of 1939. It is held that the transaction was a single sale of your transportation facilities as a going business and that the gain derived therefrom is taxable to you as a long-term capital gain under sections 22(a), 42(a), and 117 of the 1939 Code * * *

OPINION.

The only issue is whether or not the initial payments received by petitioners from Hartman Bros. during 1953, with respect to the sale of their transportation business, exceeded 30 per cent of its selling price. If so, then petitioners may not avail themselves of the benefits of reporting the sale on the installment basis, as provided in section 44(b) of the Internal Revenue Code of 1939.[1]

The record clearly establishes that the total selling price was $22,000; $5,000 for petitioner's interest in the Certificate of Public Convenience, and $17,000 for the various assets of the business. Thus, if the initial payments received during 1953, the year in which the sale took place, exceeded $6,600, 30 per cent of $22,000, petitioners cannot be sustained.

Petitioners' position can best be summarized by the following excerpts taken from their brief:

The capital gain recorded in the return of 1953, resulting from the sale of the transportation business, was reported on the installment method because the initial payment in cash was received in 1951 * * * but declared in 1953. Therefore, the money *actually* received in 1953 did not exceed 30% of the sale price within the meaning of section 44(b) of the Internal Revenue Code of 1939.

Since the initial payment was received in 1951 and spent during that same year, there was an error made on our part, by not filing in the year 1951 when the transaction took place. * * *

*       *       *       *       *       *       *

Not only was the error made by not reporting the transaction in 1951 but when we declared it in 1953, we made the error of reporting $4,000 instead of $3,500.00, the actual cash received.

It is apparent from a consideration of the record that the parties intended the various agreements to be executory until formal approval of the transfer was obtained from the Interstate Commerce Commission. It is equally clear that, though petitioners had the use of Hartman Bros.' first payment of $4,000 as early as 1951, that amount could not have been considered to be income to them until 1953, the year in which the condition precedent to its receipt as an absolute right, final Commission approval, was fulfilled. Until such approval, the $4,000 might be considered to be a loan or an advance, but certainly not a payment on account of the purchase price. *Ivan A. Greenwood*, 22 B.T.A. 1187 (1931). Therefore, in determining whether or not the

---

[1] SEC. 44. INSTALLMENT BASIS.

(b) SALES OF REALTY AND CASUAL SALES OF PERSONALTY [PERSONALTY].—In the case (1) of a casual sale or other casual disposition of personal property (other than property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year), for a price exceeding $1,000, or (2) of a sale or other disposition of real property, if in either case the initial payments do not exceed 30 per centum of the selling price * * * the income may, under regulations prescribed by the Commissioner with the approval of the Secretary, be returned on the basis and in the manner above prescribed in this section. As used in this section the term "initial payments" means the payments received in cash or property other than evidences of indebtedness of the purchaser during the taxable period in which the sale or other disposition is made.

initial payments exceeded 30 per cent of the selling price, we must consider the $4,000 as having been received in 1953.

As to the amount of initial payments received during 1953, the record is far from satisfactory. From the agreements of November 1952, it would appear that petitioners received the amount of $4,000, recited as having been received upon execution of the agreement transferring the Certificate, and the amount of $3,500, recited as the consideration received upon execution of the agreement of sale with respect to the other assets, plus any weekly payments of principal made during the year. On the other hand, petitioners returned the amount of $6,792.60 as received in 1953, comprised of a $4,000 downpayment, and payments on account of principal in the amount of $2,792.60, and it is this amount which respondent maintains was received during the year under consideration.

In any event insofar as this proceeding is concerned, under either theory, it is clear that the initial payments received by petitioners during 1953 exceeded $6,600, the statutory maximum of 30 per cent of the selling price. Consequently, the income resulting from the sale cannot be reported on the installment basis.

Petitioners' contention that they only received $3,500 during 1951 from Hartman Bros. is not supported by the record. Charles J. Hartman, one of the principals to the transaction, testified that two checks were delivered to petitioners or their agent in 1951, one in the face amount of $500, and the other in the face amount of $3,500. Moreover, the record indicates that petitioners received the benefit, either directly or indirectly, of a $4,000 payment by Hartman Bros. in 1951.

*Decision will be entered for the respondent.*

