HARRY D. ALDRIDGE AND VIRGIL ALDRIDGE, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 6447–66.    Filed December 24, 1968.

*James E. Banahan*, for the petitioners.
*Frederick W. Krieg*, for the respondent.

TANNENWALD, *Judge:* Respondent determined a deficiency of $1,879.86 in petitioners' income taxes for the taxable year ending December 31, 1963. In light of certain concessions by petitioners, the only remaining issue is whether petitioners constructively received $13,600 in 1963.

FINDINGS OF FACT

Some of the facts have been stipulated and are found accordingly.

Petitioners, husband and wife, had their legal residence in Nicholasville, Ky., at the time they filed the petition herein. They filed a joint income tax return on the cash basis for the calendar year 1963 with the district director of internal revenue in Louisville, Ky.

During 1963, the Department of Highways of the Commonwealth of Kentucky (hereinafter sometimes referred to as the condemnor) sought to acquire unimproved land owned by petitioners for a highway. In November 1963, condemnation proceedings were begun in the Fayette County Court, Lexington, Ky. (hereinafter referred to as the County Court). Petitioners' cost basis in the parcel involved (hereinafter referred to as the condemned land) was $2,814.38.

The County Court appointed appraisers, who reported to the court that the condemned land had a value of $13,600, that the damages to the adjacent land owned by petitioners were $16,350, and that a temporary easement needed by the condemnor had a value of $50.[1] On November 26, 1963, the condemnor deposited the total amount, $30,000, with the clerk of the County Court.

Petitioners filed an answer in the condemnation action, challenging the necessity of the condemnation and the condemnor's authority therefor. On December 16, 1963, the County Court handed down a judgment which held that the condemnation was proper under section 177.081 of the Kentucky Revised Statutes, that the report of the commissioners (appraisers) conformed to the provisions of Kentucky law, that the condemnor could take possession of the land upon the payment of costs of the action and of the $30,000 award to petitioners or the clerk of the court, and that petitioners should vacate the land and deliver possession to the condemnor upon payment of the $30,000 award. The prior deposit of $30,000 made by the condemnor constituted compliance with the payment provisions specified in the judgment.

By virtue of the provisions of section 177.087 of the Kentucky Revised Statutes, both the condemnor and petitioners had 30 days, from

---

[1] These latter two amounts do not present any issue herein.

and after December 16, 1963, in which to file an appeal from the judgment of the County Court.

On January 10, 1964, petitioners filed an appeal, limited solely to the amount of the award, with the Fayette Circuit Court, After a series of negotiations, the condemnor agreed in November 1965 to a total payment of $35,000. An agreed order of settlement was obtained from the Fayette Circuit Court, which directed the clerk of the County Court to pay over the $30,000 deposit to the petitioners, the condemnor to pay over another $5,000, and the petitioners to execute and deliver a deed to the property to the condemnor.

At no time prior to this order of settlement had the petitioners ever attempted to withdraw the $30,000 deposited with the clerk of the County Court. Petitioner Harry D. Aldridge felt that to withdraw the deposit while the appeal was pending would jeopardize his chance of obtaining more than $30,000. In December 1965, petitioners were paid the $30,000 deposit under the settlement order. In the same month, they executed a deed to the condemned property and delivered it to the condemnor. In January 1966, the condemnor paid them the final $5,000.

Petitioners were not allowed to use the condemned land after the judgment of December 16, 1963, but the condemnor did not take actual possession until 1966.

In May 1965, petitioners replaced the condemned land. Respondent has conceded that the property thus purchased was "similar or related in service or use" to the condemned property.

Petitioners' 1963 Federal income tax return did not include in gross income any amount attributable to the condemnation of the property and in no way reported the condemnation. Petitioners' 1965 Federal income tax return reported the condemnation and recited an election "to postpone recognition of any gain since a new farm was acquired in 1965 to replace existing farm."

On July 14, 1966, petitioners requested that the district director of internal revenue grant them a retroactive extension of the period during which property could be replaced under section 1033, I.R.C. 1954. On August 9, 1966, this request was denied.

OPINION

It is conceded that petitioners have, with one exception, complied with the provisions of section 1033 [2] regarding the nonrecognition of gain from the involuntary conversion of property. The exception relates to the question whether the replacement of the condemned property in May 1965 was accomplished within "one year after the close

---

[2] All references herein are to the Internal Revenue Code of 1954.

of the first taxable year in which any part of the gain upon the conversion is realized." Sec. 1033(a)(3)(B)(i).[3] If petitioners realized gain in 1963, they are taxable thereon in 1963, since the replacement did not occur within the prescribed period.

Petitioners' land was the subject of condemnation proceedings. On December 16, 1963, a County Court in Kentucky handed down its judgment that the land was the proper subject of condemnation and that petitioners should receive $30,000 compensation therefor. The condemnor (the Department of Highways of the Commonwealth of Kentucky) was authorized to take possession of the land upon the payment of the $30,000 either to petitioners or to the clerk of the court. It had deposited that sum with said clerk on November 26, 1963, and this deposit complied with the payment provisions of the judgment. Both parties had 30 days from the entry of judgment to file an appeal and, on January 10, 1964, petitioners did appeal. Subsequent negotiations resulted in a settlement of the condemnation proceedings in November 1965 at an increased amount of $35,000. At no time prior to the settlement did petitioners attempt to withdraw the $30,000. From and after December 16, 1963, petitioners were not allowed to use the land, but the condemnor did not take actual possession until 1966. Petitioners withdrew the $30,000 deposit in December 1965 and executed a deed of the land at about the same time. The remaining $5,000 was paid to them in January 1966.

The condemnation was carried out under sections 177.081 through 177.089 of the Kentucky Revised Statutes Annotated, the pertinent provisions of which are as follows:[4]

177.087 Time for filing and proceedings upon appeals to the circuit court and Court of Appeals.

\* \* \* \* \* \* \*

(4) The payment by the condemnor of the amount of compensation awarded and the taking possession of the lands and material condemned shall not prejudice its right to appeal from the judgment of any court, nor shall the acceptance by the owner of the amount of the compensation awarded prejudice his right to appeal from the judgment of any court.

(5) If the condemnor takes possession of the land and material condemned and the amount of compensation is thereafter increased upon an appeal, the condemnor shall pay interest to the owner at the rate of six percent per annum upon the amount of such increase from the date the condemnor took possession of the land and material. If the condemnor takes possession of the land and material condemned and the amount of compensation is thereafter decreased

---

[3] Petitioners make no claim that their time to replace the condemned property was extended by respondent or that respondent's refusal to grant their 1966 application for an extension of time was arbitrary or otherwise unwarranted. See sec. 1.1033(a)–2(c)(3), Income Tax Regs.; cf. *Boyce* v. *United States*, 405 F. 2d 526 (Ct. Cl. 1968).

[4] All Kentucky statutory references are to Ky. Rev. Stat. Ann. (Baldwin's, 3d ed., 1963, including 1968 Supp.).

upon an appeal, the condemnor shall be entitled to a personal judgment against the owner for the amount of the decrease plus interest at the rate of six percent per annum from the date the owner accepted the amount of compensation the condemnor paid into Court or to the owner. If the owner at all times refuses to accept the payment tendered by the condemnor, no interest shall be allowed in the judgment against the owner for the amount of the decrease.

177.088    Payment of compensation into court.

All money paid into Court or paid or transferred to the Clerk of a Court under the provisions of KRS 177.081 to 177.089 shall be received by the Clerk of the Court and held subject to the order of the Court, for which the Clerk and his sureties on his official bond shall be responsible to the persons entitled thereto.

Against the foregoing background, petitioners argue that, as cash basis taxpayers, their right to the funds on deposit with the clerk of the County Court was subject to substantial limitation or restriction so that the funds were not constructively received by them in 1963. Respondent contends that petitioners could have drawn the entire $30,000 [5] in December 1963 so that they should be held constructively to have received that amount in that year.[6] We have concluded that respondent's position should be sustained.

Petitioners make a two-pronged argument against a holding of constructive receipt in 1963. The first prong is that if they had withdrawn the deposit, they might have been required, upon an appeal, to repay all or a portion of the same with interest by virtue of section 177.087(5) of the Kentucky Revised Statutes Annotated, *supra*. This assertion is clearly without merit. Any withdrawal would have been under a claim of right, and the potential obligation to repay its equivalent in a later year is not sufficient to defeat a claim of current taxability. *North American Oil* v. *Burnet*, 286 U.S. 417 (1932). Their mere failure to withdraw makes no difference to their claim of right. *Anderson* v. *Bowers*, 170 F. 2d 676 (C.A. 4, 1948) ; *Commissioner* v. *Brooklyn Union Gas Co.*, 62 F. 2d 505 (C.A. 2, 1933), affirming 22 B.T.A. 507 (1931) ; *Penn* v. *Robertson*, 115 F. 2d 167 (C.A. 4, 1940). The fact that, by withdrawing the deposited award, petitioners would be required to pay interest if the award was reduced on appeal does not require a different conclusion. Perhaps the avoidance of liability for interest by not withdrawing the funds (see sec. 177.087(5), Ky. Rev. Stat. Ann., *supra*) may have provided a motive for leaving the deposit in court. But the obligation was contingent

---

[5] See fn. 1, *supra*.

[6] Income Tax Regs. :

Sec. 1.451–2    Constructive receipt of income.

(a) *General rule.* Income although not actually reduced to a taxpayer's possession is constructively received by him in the taxable year during which it is credited to his account, set apart for him, or otherwise made available so that he may draw upon it at any time, or so that he could have drawn upon it during the taxable year if notice of intention to withdraw had been given. However, income is not constructively received if the taxpayer's control of its receipt is subject to substantial limitation or restrictions. * * *

upon an appeal being taken by the condemnor (which might not occur),[7] would attach to only a portion and not all of the deposit, and represented no more than a normal payment for the use of money which a condemnee had put to work for his own benefit.[8]

Nor are we impressed with petitioners' claim that a withdrawal by them should be analogized to a loan in the nature of an advance payment on an executory contract to sell which might have been called off because of nonoccurrence of conditions subsequent. Cf. *Daniel Rosenthal*, 32 T.C. 225 (1959). Under Kentucky law, it appears that the judgment of the County Court and the payment to the clerk of that court operated to prevent any subsequent abandonment by the condemnor (even though it had not taken possession) and to assure petitioners that they would be compensated for their land. *Patrick* v. *Kentucky Farm Bureau Mutual Ins. Co.*, 413 S.W. 2d 340, 343, (Ky. 1967); cf. *Commonwealth* v. *Fultz*, 360 S.W. 2d 216 (Ky. 1962); *Potter* v. *Wallace*, 185 Ky. 528, 215 S.W. 538 (1919); see *Manion* v. *Louisville, St. L. & T. Ry. Co.*, 90 Ky. 491, 494, 495, 14 S.W. 532, 533, (1890); but see *Shelton* v. *Webster County Soil Cons. District*, 377 S.W. 2d 81, 85 (Ky. 1964). Compare *General Bakery Co.*, 48 T.C. 201 (1967). Even though title may not have been technically transferred until 1965 when the condemnor received a deed, the right to possession of the land passed to the condemnor to the exclusion of the petitioners by virtue of the judgment of the County Court and the payment to the clerk thereof in 1963. *Patrick* v. *Kentucky Farm Bureau Mutual Ins. Co.*, supra. The transaction is thus more comparable to a contract of sale where the benefits and burdens have passed to the purchaser. Cf. *Wiseman* v. *Scruggs*, 281 F. 2d 900 (C.A. 10, 1960); *Consolidated Gas & Equipment Co. of America*, 36 T.C. 675, 684 (1961); *Ottilie B. Kuehner*, 20 T.C. 875 (1953); *Standard Lumber Co.*, 28 B.T.A. 352 (1933).[9]

The second prong of petitioners' argument is that they had no right to immediate payment of the deposited award in 1963 and, therefore, there was no constructive receipt in that year. *North American Oil Consolidated* v. *Burnet*, supra. Petitioners properly disavow any argument based upon the proposition that withdrawal of the

---

[7] If only the condemnor appealed, the appraisers' award would act as a ceiling on the final award. *Commonwealth, Department of Highways* v. *Parsons*, 383 S.W. 2d 360 (Ky. 1964). If only the petitioners appealed, the appraisers' award would act as a floor. *Commonwealth of Kentucky, Department of Highways* v. *C. S. Brent Seed Co.*, 376 S.W. 2d 310 (Ky. 1964).

[8] Whether the existence of an obligation to repay a substantial amount (e.g., as a penalty) in addition to the funds withdrawn might constitute a significant restriction, we do not now decide.

[9] Petitioners have made no argument based on a lack of authority in the condemnor, a question which they had originally raised in the County Court proceeding and which was still capable of being put in issue on appeal. In this connection, we note that petitioners in fact did not raise this issue in their appeal.

deposit would have prejudiced their right of appeal. See sec. 177.087, Ky. Rev. Stat. Ann., *supra;* cf. *William Parris,* 20 B.T.A. 320 (1930). Their assertion is based upon section 177.088 of the Kentucky Revised Statutes, *supra,* which specifies that money paid to the clerk shall be "held subject to the order of the Court." But it does not follow from this provision that petitioners' right to withdraw the money was subject to any limitation or restriction which effectively impaired their ability to obtain the funds upon demand. Here again we must look to Kentucky law and practice to determine petitioners' rights of withdrawal, since rights in the eminent-domain arena are dependent upon the statutory provisions of the particular State. See *Patrick* v. *Kentucky Farm Bureau Mutual Ins. Co., supra* at 343. We have received no enlightment from the parties and our own efforts at self-enlightment have not uncovered any statutory provisions, reported cases, or published rules dealing directly with this point. We do know, however, that the Kentucky constitution requires just compensation be paid to a property owner before a taking. Ky. Const., secs. 13 and 242. Accord, *Barker* v. *Lannert,* 310 Ky. 843, 222 S.W. 659 (1949) ; and the Kentucky courts have shown a predilection to construe these provisions as demanding prior actual payment or the equivalent thereof. *Long Fork Ry. Co.* v. *Sizemore,* 184 Ky. 54, 211 S.W. 193 (1919) ; *Asher* v. *Louisville & N. R. Co.,* 87 Ky. 391, 8 S.W. 854 (1888) ; *Covington S. R. T. Ry. Co.* v. *Piel,* 87 Ky. 267, 8 S.W. 449 (1888). In view of the fact that section 177.086 of the Kentucky Revised Statutes authorized the taking of possession upon payment of the commissioner's award either "to the owner or the clerk of the Court," we conclude that the payment by the condemnor herein was in effect a continuing tender of payment to petitioners which petitioners could have received at any time.

Petitioners contend that their proof of the statutory provision requiring that the award deposit be held subject to court order is sufficient to shift to the respondent the burden of proof as to the absence of any limitation or restriction on payment. We disagree. We think it was incumbent upon petitioners to introduce some evidence of the general practice or procedure with respect to the manner in which that provision is applied. Alternatively, we think it essential that there be some published laws, rules, regulations, or decisions of which we could take judicial notice as to the meaning of the statute. We of course need not decide whether the burden of proof would have shifted if either of these conditions had been satisfied. We note also that there is no indication of conflicting claimants to the deposit which might have required further judicial proceedings under section 177.089 of the Kentucky Revised Statutes before petitioners' share could be fixed. Cf. *Estate of Dick W. Paul,* 11 T.C. 148 (1948).

In short, we have nothing either by way of evidence or by way of material of which judicial notice might have been taken, which would provide us with any basis upon which we could determine that petitioners' right of withdrawal was subject to sufficient limitation or restriction or would have subjected petitioners to such forfeiture of valuable rights as to justify the conclusion that the amount of $13,600 deposited herein as payment for the condemned land was not constructively received in 1963.

Petitioners' reliance on *Nitterhouse* v. *United States*, 207 F. 2d 618 (C.A. 3, 1953), and *Adolph K. Feinberg*, 45 T.C. 635 (1966), affd. 377 F. 2d 21 (C.A. 8, 1967), is misplaced. In *Nitterhouse*, the taxpayer was required to satisfy the court that he had clear title to the land as a condition precedent to payment. In *Feinberg*, the question was whether the taxpayer realized gain on the date of his actual withdrawal of the deposited funds. Realization through constructive receipt prior to that time was not in issue. Nor are *Patrick McGuirl, Inc.* v. *Commissioner*, 74 F. 2d 729 (C.A. 2, 1935), and *Driscoll Bros. & Co.* v. *United States*, 221 F. Supp. 603 (N.D.N.Y. 1963), in point. Both cases involved accrual basis taxpayers and are otherwise clearly distinguishable on their facts. Finally, even if petitioners are correct as to their interpretation of examples contained in respondent's publication entitled "Your Federal Income Tax," respondent is not precluded from asserting a contrary construction of section 1033 herein. *Adler* v. *Commissioner*, 330 F. 2d 91 (C.A. 9, 1964), affirming a Memorandum Opinion of this Court.

Under all the circumstances herein, we are forced to conclude that petitioners have failed to prove that they did not constructively receive the proceeds of the condemnation in 1963 and we accordingly sustain respondent's determination.

In order to reflect the conceded issues,

*Decision will be entered under Rule 50.*