Town Park Hotel Corporation v. Commissioner.
Town Park Hotel Corp. v. Commissioner
Docket No. 2531-69.
United States Tax Court
T.C. Memo 1970-261; 1970 Tax Ct. Memo LEXIS 98; 29 T.C.M. (CCH) 1150; T.C.M. (RIA) 70261; September 14, 1970, Filed. Charles M. Collins (an officer), and Wayne C. Marsh, Holiday Inns of America, Inc., Memphis, Tenn., for the petitioner. Jack D. Yarbrough, for the respondent. TIETJENS
Memorandum Opinion TIETJENS, Judge: The Commissioner determined a deficiency in petitioner's Federal income tax for the fiscal year ended June 30, 1965 in the amount of $112,223.74. The only issue presented for our decision is whether petitioner reinvested the proceeds received on the condemnation of its property within the time limit of section 1033 (a)(3)(B)(i), I.R.C. 1954, [1] and thereby was entitled to treat the gain thereon as one entitled to nonrecognition treatment. *99 All of the facts have been stipulated. The stipulation and exhibits attached thereto are incorporated herein by this reference. Petitioner, Town Park Hotel Corporation, was incorporated under the laws of the State of Tennessee on December 1, 1952. Petitioner owned and operated a motel, restaurant, and related facilities at the corner of Pennsylvania Street and Crump Boulevard in Memphis, Tennessee. Its common stock was acquired by Holiday Inns of America, Inc. (now Holiday Inns, Inc.) in December 1961. At the time of the filing of the petition herein, the petitioner's principal office was located in Memphis, Tennessee. Petitioner at all times pertinent herein maintained its records and filed its income tax returns on the accrual method of accounting. Corporation income tax returns for its fiscal years ended June 30, 1965, June 30, 1966, and June 30, 1967, were filed with the Internal Revenue Service Center at Chamblee, Georgia, or with the director of internal revenue at Nashville, Tennessee. On August 14, 1964, the Commissioner of Highways and Public Works of the State of Tennessee filed a petition for condemnation in the Circuit Court of Shelby County, Memphis, Tennessee, against *100 petitioner for the purpose of acquiring a portion of petitioner's land and building. Upon the filing of the petition the State of 1151 Tennessee deposited the sum of $722,476 with the court. The circuit court entered an order of condemnation and appropriation on August 21, 1964, which inter alia, sustained the petition of the State of Tennessee as a petition of condemnation as of August 21, 1964; that the land sought in the petition was appropriated to the use of the State; that the State had immediate legal possession of the land; that the State had a right of entry for the purpose of removing the improvements within the right-of-way; and, that petitioner specifically reserved its right to contest the amount of compensation for the taking of the property and incidental damages. On September 30, 1964, an order of disbursement was signed by the court and the sum of $722,476 was withdrawn by petitioner on that date, and deposited in its bank account. Shortly after receiving the aforementioned deposit, petitioner advanced the amount of the deposit it had withdrawn to affiliated corporations. The case was set for trial on September 20, 1965, and petitioner was required to waive *101 any interest upon any award in excess of the sum theretofore deposited by the State for the period from May 17, 1965 to September 20, 1965, due to its request for continuances. Pursuant to an oral order of the circuit court the State filed an amendment to petition on March 28, 1966 to correct an error in the description of the property in the petition for condemnation. On April 16, 1966, the circuit court entered a decree divesting and vesting title and recording jury verdict and entering judgment thereon in the case. In this decree the jury verdict was recited in which petitioner was awarded $725,000 for the land and improvements and, in addition, incidental damages of $215,000, plus interest. Pursuant to this decree, it received the additional sum of $232,792.40, having been adjudged to be the sole owner of the property. On April 28, 1967, the petitioner expended the sum of $1,678,781.34 for the purchase of a 132-unit motel in Santa Monica, California, from its parent, Holiday Inns, Inc. This property is similar and related in service and use to the motel property condemned by the State of Tennessee as specified in section 1033(a)(3)(A). In its income tax return for the fiscal *102 year ended June 30, 1965, petitioner reflected that it had a gain of $225,187.76 from the sale of property on September 30, 1964 for a gross sales price of $722,476. On this schedule the petitioner had the following statement: The total gain as shown in Column G on involuntary conversion is not recognized in this fiscal year. Town Park Hotel Corporation intends to reinvest entire proceeds in similar property within a year as provided in Section 1033. In its income tax return for the fiscal year ended June 30, 1966, petitioner reflected that it had gains of $225,187.76 on September 30, 1964 and $233,727.75 on May 31, 1966, from the sales of property respectively, on these dates for a gross sales price of $722,476 and $233,727.75. On this schedule the petitioner had the following statement: The total gain as shown in Column G on involuntary conversion is not recognized in this fiscal year. Town Park Hotel Corporation intends to reinvest entire proceeds in similar property within a year as provided in section 1033. At the bottom of this Schedule D petitioner had the following "Note": Offer in settlement received September 1964. Lawsuit filed and settled in Jury trial May 1966 *103 with total award of $956,203.75. The petitioner did not make application for an extension of time within which to replace the property condemned and converted by the State of Tennessee in the litigation as provided in section 1033(a) (3)(B)(ii). The Commissioner determined that petitioner had not reinvested the proceeds from the condemnation of its property within "one year after the close of the first taxable year in which any part of the gain * * * is realized," i.e. within the year following its fiscal year ended June 30, 1965, since the petitioner made the withdrawal from the circuit court on September 30, 1964. Therefore petitioner was not entitled to the nonrecognition feature of section 1033(a)(3)(A). The parties have stipulated that the gain on withdrawal of the funds in 1964 is in the amount of $449,754.33 computed as follows: 1152 *10 REALIZED GAIN ON RECEIPT OF CONDEMNATION PROCEEDS FOR THE FISCAL YEAR ENDED 6/30/65
Condemnation deposit withdrawn on September 30, 1964
$722,476.00
Cost or other basis of all land and depreciable assets
$1,174,275.21
Less cost of assets not condemned 402,059.34
Cost of assets condemned
$ 772,21587
Depreciation allowed or allowable with respect to these assets 499,494.20
272,721.67
Gain on condemnation $449,754.33
*104 The sole issue facing us is whether petitioner reinvested proceeds from condemnation within the applicable time limit to be able to avail itself of the nonrecognition of gain provision of section 1033, which provides in pertinent part: SEC. 1033. INVOLUNTARY CONVERSIONS. * * * (3) Conversion into money where disposition occurred after 1950. - * * * (A) Nonrecognition of gain. - If the taxpayer during the period specified in subparagraph (B), for the purpose of replacing the property so converted, purchases other property similar or related in service or use to the property so converted, or purchases stock in the acquisition of control of a corporation owning such other property, at the election of the taxpayer the gain shall be recognized only to the extent that the amount realized upon such conversion (regardless of whether such amount is received in one or more taxable years) exceeds the cost of such other property or such stock. * * * (B) Period within which property must be replaced. - The period referred to in subparagraph (A) shall be the period beginning with the date of the disposition of the converted property, or the earliest date of the threat or imminence of *105 requisition or condemnation of the converted property, whichever is the earlier, and ending - (i) 2 years [2] after the close of the first taxable year in which any part of the gain upon the conversion is realized, or Petitioner contends that as an accrual basis taxpayer it did not realize gain from the condemnation until fiscal year ended June 30, 1966, when the damages were fixed and title vested in the State, and therefore by reinvesting the proceeds in similar property during fiscal year ended June 30, 1967, it complied with the statute. The Commissioner counters by saying that part of the gain was realized during fiscal year ended June 30, 1965, i.e. on September 30, 1964 when petitioner withdrew $722,476 from the circuit court, and therefore it had to reinvest by June 30, 1966 to avail itself of the nonrecognition provision of section 1033. We agree with the Commissioner. *106 The issue herein is controlled by the oftcited case of North American Oil v. Burnet, 286 U.S. 417, 424 (1932), wherein Mr. Justice Brandeis stated: If a taxpayer receives earnings under a claim of right and without restriction as to its disposition, he has received income which he is required to return, even though it may still be claimed that he is not entitled to retain the money, and even though he may still be adjudged liable to restore its equivalent. We have undertaken an investigation of the law of Tennessee because rights in the sphere of eminent domain rest in the laws of the State. Harry D. Aldridge [Dec. 29,281], 51 T.C. 475 (1968). This investigation [3] discloses the following procedure for condemnation proceedings and convinces us that petitioner withdrew the funds under a claim of right. The State deposits in court the amount it determines to be the damages to which a property owner is entitled by reason of the exercise of the power of eminent domain. The owner, if he is not satisfied with this amount, may ask for a jury trial solely on the issue of the amount of compensation to be paid for the property taken. However, such action does *107 not impair his ability to request the clerk of the court to pay over to him, prior to trial, the amount deposited, subject 1153 to refunding the difference if the final award be in a lesser amount or to a judgment being entered against him for the difference. The above procedure was followed by the State and petitioner. Petitioner did in fact withdraw the funds and expend them in the form of advances to its affiliates. However, petitioner says that this did not amount to receipt under a claim of right and cites Healy v. Commissioner, 345 U.S. 278 (1953). However, a reading of Healy v. Commissioner, supra at 282, brings to light this statement: There is a claim of right when funds are received and treated by a taxpayeras belonging to him. The fact that subsequently the claim is found to be invalid by a court does not change the fact that the claim did exist. A mistaken claim is nonetheless a claim, * * *. We feel this statement adequately meets and disposes of petitioner's argument that it had no claim of right because the State could have withdrawn from the condemnation *108 proceedings at any time thereby forcing petitioner to return the money to the State. Petitioner's argument that no gain was realized until legal title passed under the decree of April 16, 1966 is not well taken. By virtue of the condemnation order of August 21, 1964, petitioner's land was appropriated to the use of the State; the State obtained immediate legal possession and the State obtained a right of entrv to remove all improvements within the right-of-way. What remained for petitioner thereafter amounts to no more than bare legal title. Similar circumstances existing in Harry D. Aldridge, supra, did not there prevent a finding of gain realized prior to the passing of title, and we are aware of no valid reason why the basic reasoning therein is inapplicable here; to wit, the right to possession passed exclusively to the State coupled with a deposit in court by the condemnor, making the events resemble a "contract of sale where the benefits and burdens have passed to the purchaser." Harry D. Aldridge, supra at 480. Petitioner's argument that as an accrual basis taxpayer it was not required to report the amount of gain until fiscal year ended June 30, 1966 because *109 prior thereto neither the right to receive such income nor the amount thereof could be reasonably determined is to no avail in light of Whitaker v. Commissioner, 259 F. 2d 379 (C.A. 5, 1958), affirming 27 T.C. 399. That case states, at 392: The claim of right doctrine is firmly established in our tax law. If a taxpayer receives earnings under a claim of right, without restriction as to its use, it is taxable income in the taxable year when he receives the earnings. The principle applies even though in a later year he may be required to refund all or part of the money. It applies whether returns are on the cash or accrual basis. Any amount repaid is deductible in the year of repayment (on the cash basis) or the year in which the liability to repay becomes fixed (on the accrual basis). * * * [Footnote omitted; emphasis supplied.] We conclude that petitioner, to avail itself of nonrecognition treatment, was required to reinvest the proceeds from condemnation no later than fiscal year ended June 30, 1966, since part of the gain upon conversion was realized within fiscal year ended June 30, 1965; specifically on September 30, 1964, when petitioner withdrew *110 $722,476 from the circuit court under a claim of right since petitioner received and treated such funds as its own, depositing them in its bank account and by advancing them to its affiliates. Healy v. Commissioner, supra. Accordingly, Decision will be entered for the respondent. Footnotes
1. All statutory references are to the Internal Revenue Code of 1954 unless otherwise specified.↩
2. The time limit of 2 years was added by section 915(a) of the Tax Reform Act of 1969 and applies to the disposition of converted property occurring after December 30, 1969. For prior years, which includes the year in question herein, 1965, the applicable time limit of section 1033(a)(3)(B)(i)↩ is one year.
3. Tenn. Code Ann., sec. 23-1528-30↩; 23-1532-33; and 23-1535 (Cum. Supp. 1969).